ADELIA B. TRUE, Appellant, *vs.* CLINTON J. TRUE, Respondent.

APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

A decree for a divorce cannot be made upon the admission of the facts charged in the complaint: They must be substantiated by proof, and the proof must be that of witnesses other than the parties to the record.

Where a decree for divorce is assailed for fraud used in obtaining the same, and the fraud is clearly made out, the decree may be vacated.

### Points and Authorities for Appellant.

I.—The decree and judgment were regular, authorized by law and in accordance with the rules and practice of the District Court for Washington county. *Comp. Stat. Minn.*, 463, 464; *see grounds of motion for judgment, folios 21-2, return; Stat. Minn.*, 543, *secs.* 88-9,—541, *sec.* 74; *Rule* 16 *of Law,*

*and* 36 *of Equity Rules of District Court for Washington County, folios* 27-8, *return.*

II.—There was in fact no collusion between the parties to the action in respect to the action, its objects, or to the decree and judgment therein.

The *onus probandi* is upon him who asserts fraud. *Willard's Eq. Jur.*, 148.

*a.* It is doubtful whether the pretended affidavits of True, the Defendant, and of Sarah E. Demaray are really affidavits and were ever sworn to by either of them.

*b.* The affidavit of Defendant True contains the only proof of any corrupt agreement between the parties, and the effect and veracity of this affidavit are destroyed by the affidavits of Adelia B. True, the Plaintiff, of Charles S. Clark, Gold T. Curtis and John P. Houston.

The affidavit of Mr. Thompson is merely as to the acts of Clark, and not of the Plaintiff.

III.—The District Court has no power or authority to vacate a decree and judgment of divorce once granted and entered.

The decree of divorce was granted by a Court of competent authority, and fully and completely dissolved the marriage contract, and the Court has not the power to unite the parties again in matrimony, *nolens volens,* by a revocation of the decree.

*Stat.,* 539, *sec.* 56; 463, *sec.* 5; 466, *sec.* 29, 30, 31, shows that it was contemplated that a decree of divorce should be final.

IV.—But if the Court has the power to interfere and vacate the judgment, it will not do so in this case. *Note* 2 *to sec.* 298, *Story's Eq. Jur.,* and cases there cited, between twenty and thirty in number.

V.—Material allegations in the complaint amply sufficient to sustain the decree for divorce, are not denied in the pretended affidavit of Defendant True, or any other of the affidavits.

In folio 5 and 6 the Defendant is charged with other acts of adultery besides those denied. *Folio* 42.

The allegations of the complaint (folio 10.) are not denied;

of the absence of Defendant from his wife for most of the time since May, 1858, without any just cause. The charges in folio 11 and part of folio 12, that the Plaintiff has ceased to love or respect the Defendant, and entertains towards him only feelings of fear and aversion, (folio 18) &c., and that the Plaintiff and Defendant cannot live in peace and happiness together, and that their welfare requires a separation.

Points and Authorities of Respondent.

I.—The decree in this action was improvidently granted and not authorized by law.

II.—Courts of Record have control over all judgments or decrees made by them, and have authority to correct or vacate their judgments and decrees in all cases where a fraud has been perpetrated upon the Court. *Willard's Eq.*, 163; 6 *Wend.*, 537.

III.—The decree in this action and the judgment entered therein having been obtained by collusion between the parties, was properly vacated and set aside.

IV.—There having been some evidence produced to the Court below showing a collusion between the parties in obtaining the decree, and sufficient to satisfy the Court below, this Court will not consider the weight of evidence offered.

V.—It appears from the Appellant's own showing that the collusion charged existed in regard to one of the provisions of the decree, viz.: the custody of the child, which was as much a matter requiring the sound judgment and discretion of the Court, as any portion of the relief prayed for. See affidavit of Clark and Curtis.

Good morals and the welfare of society demand in cases of this nature that the charges in the complaint should be investigated and proved to the satisfaction of a Court.

CURTIS & HOUSTON, Counsel for Appellant.

L. E. THOMPSON, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—This is an action for a di-

vorce *a vinculo matrimonii*, brought by the wife against her husband, charging him with adultery, cruel and inhuman treatment, neglect, want of affection, and conduct rendering a dissolution of the marriage contract necessary to the peace and happiness of the wife.  The Defendant put in an answer which raised no material issue, confessing the charges in effect. A motion was then made by the Plaintiff to strike out the answer and for judgment on the pleadings.  The motion was granted by default, no one appearing to oppose it, and a decree entered upon the complaint as confessed, without any proof being taken of the facts charged, dissolving the marriage contract, and awarding the custody of the infant child of the parties to the wife.

The Defendant subsequently moved the Court to set aside the decree, and allow him to come in and answer, upon an affidavit of his own, denying the charges in the complaint, and alleging that one Clarke, a brother-in-law of the Plaintiff, had assumed the control of the Plaintiff, and had negotiated with the Defendant to allow the Plaintiff to procure a divorce, without the Defendant making any defence, and had offered him large sums of money to consent thereto ; and had obtained from the attorneys of the Plaintiff the draft of an answer that raised no material issue to be put in, which answer had been actually made, &c.  Also an affidavit of the woman with whom the adultery was specifically charged, denying the same ; and the affidavit of L. E. Thompson, that Clarke, the brother-in-law of the Plaintiff, had deposited with a banker in Saint Paul, the certificate of deposite of another banker in Stillwater, where the parties resided, for the sum of fifteen hundred dollars, to be delivered to the Defendant when a decree of divorce, and awarding the possession of the child to the Plaintiff, was obtained, subject to the proviso that the Defendant should not interpose any other defence in the action than the answer that was then in, which was the insufficient answer before spoken of, and that the certificate was subsequently delivered to the Defendant.

The motion was opposed, and an affidavit of the Plaintiff was read, denying that she knew anything about the facts of collusion, &c., or ever authorized the said Clarke to make any

agreement or deposit the certificate, as stated by Thompson·
. Clarke also swears that the agreement with the Defendant
was concerning the custody of the child, and not touching the
divorce, and he denies the alleged collusion touching the bad
answer, and alleges that the Plaintiff was ignorant of his
intervention in the matter.

One of the Plaintiff's attorneys denies positively any knowl-
edge of, or participation in, furnishing the draft answer, and
the other member of the firm denies it evasively.

Upon this state of facts the Court opened the decree, and
from the order so made, the Plaintiff appeals.

The Plaintiff's counsel insists that a decree for a divorce
may be taken upon a failure to answer, without proof of the
facts alleged, as in any other case, and further, that a decree
once made in such case is final, and can neither be appealed
from, or disturbed on motion for any cause.

We will examine two points which seem prominently to be
involved in this case, although the first one, as we view it,
would be sufficient to decide the whole matter, leaving, as it
does, the action of the Court in making the decree, without
authority of law or jurisdiction. It is the granting the decree
without proof. The second point will be whether a decree so
granted, or obtained by collusion of the parties and fraud upon
the Court, can be relieved against.

The contract of marriage differs from all other contracts in
being indissoluble by the action of the parties to it, and of
perpetually binding obligation until discharged by a compe-
tent court. It is the most important of the social relations.
It is sanctioned by Divine authority, and recognized by all
Christian nations as the palladium of virtue, morality, social
order, and the permanent happiness of the human race. To
its auspicious influence may be traced the great advances
made in civilization, through the elevation of woman to social
equality, the education of children, the refinement of man-
ners, the improved sense of justice, the enlightened cultiva-
tion of the arts, and the physical development of man ; and,
above all, it is valuable as awakening in the human heart
those chaste and exalted conceptions of virtue, which, in spi-
ritualizing the mind, and subduing the grosser passions of

men, give moral character and grandeur to the State. It is the only lawful relation for the continuance of the species and the perpetuity of the choicest benefits permitted by Providence to the enjoyment of man, and as such should engage the most profound solicitude of the legislator and the courts, to preserve it unsullied in its purity, and transmit it to posterity with its integrity unimpaired.

It is not pretended that by the mere consent of the parties the marriage contract may be dissolved, and it is for us to determine whether the same end may be attained by the mere form of a statement of the facts charged in a complaint by one of the parties, and the confession of them by the other, without any further proof. The power of granting divorces belonged formerly to the ecclesiastical courts, and was regulated by the canon law. The 105th canon, after reciting that matrimonial causes required the greatest caution when the marriage was sought to be dissolved upon any suggestion or petext whatever, concludes as follows: " We do strictly charge and enjoin, that in all proceedings to divorce and nullities of matrimony, good circumspection and advice be used; and that the truth, as far as is possible, be sifted out by the depositions of witnesses, and other lawful proofs and evictions; and that credit be not given to the sole confessions of the parties themselves, howsoever taken upon oath, either within or without the court." *Devenbagh vs. Devenbagh*, 5 *Paige, Ch. R.* 554. The State of New York has by statute made a provision to the same effect. 2 *N. Y. Rev. Stats.*, 144, *sec.* 35, and has also made full provisions by rules of Court, to carry it out. On the argument of this case we were impressed by the idea that our statutes contained a similar provision and suggested it to the counsel; but on a full examination of the statutes and the rules of Court, we are unable to find anything on the subject. The idea which we entertained must have arisen from the almost universal prevalence of such a rule in practice, and the necessity of it to prevent fraud and collusion in the procurement of divorces. My own practice, when acting as District Judge, was always to require proof of all the material facts, and by witnesses other than the parties themselves. This Court is of the same opinion, notwithstanding the apparent silence of the statute.

It is insisted that no distinction is made in divorce cases in this respect by the statutes of this State, and that they stand governed by the same rules as other actions. We have pointed out the radical difference between the marriage contract and other civil contracts, which we think is alone sufficient to authorize the Court to adopt the principles of the canon law concerning its dissolution. It matters not to society at large whether A or B owns any particular estate in lands or other property, and the law therefore imposes no restrictions upon them in confessing away or surrendering their rights in such matters; but the community and the State have the most vital interest in the sanctity of the marriage compact, and have confided its keeping to the courts of justice alone, and limited the causes for which it can be broken to such as are deemed, in the wisdom of our rulers, incompatible with its continuance and the well being of the parties and society.

Previous to the year 1855, a divorce could only be granted for six causes—adultery, impotency, imprisonment in the Penitentiary of either party, wilful desertion for one year, cruel and inhuman treatment, and habitual drunkenness for a year. In 1855, to meet a particular case, the legislature (as we think subsequent events have fairly proven) improvidently added the following clause to the law: "When it shall be made fully to appear that from any other reason or causes existing, the parties cannot live in peace and happiness together, and that their welfare requires a separation." *Comp. Stats.*, 463, sec. 7.

It is not for us to criticise, but to expound and apply. This section has been gravely quoted in other cases as showing the intention of the legislature to be the encouragement of divorces by affording unusual facilities for their attainment; but while we concede that it allows the Courts a wide field for the exercise of discretion in determining such causes, we do not think it in any manner relaxes the rules by which such applications should be scrutinized, and such relief administered.

We think upon an examination of the whole statute concerning the subject of divorces, it is fairly inferable that the decree cannot be made upon the admission of the facts

charged in the complaint.   It differs from the ordinary civil
action to redress private wrongs or enforce private rights, in
many essential particulars.   It requires a longer notice to ap-
pear and answer, with a discretion in the Court to order a
still longer time in proper cases.   It allows the answer in all
cases to be without oath, the evident design of which is, that
the Defendant shall not be compelled· to aid by his confes-
sions the establishment of the charges against him, but that
the Plaintiff shall make them good by other proof. It is only
necessary to state in the complaint the names and ages of the
parties, the name of the Court in which the action is brought,
and the facts constituting the cause or grounds of the com-
plaint, and the Court may, on the hearing of the action, not
only pronounce sentence of divorce, but determine which of
the parents shall have the custody of the children, restore the
wife to her real estate, and regulate the enjoyment by her of
her personal estate, award alimony to the wife from the estate
of the husband, and change the name of the wife.   These
matters may all be examined into on the hearing without al-
legations concerning them in the. complaint, showing conclu-
sively that the whole statute contemplated the intervention
of the Court upon proof.   But even without these indications
from the statute, we would feel bound from the nature of the
contract sought to be avoided, to hold that the facts must be
substantiated by proof, and that the proof must be that of
witnesses other than the parties to the record. *Bishop on
Marriage and Divorce, secs.* 299 *to* 307, *inclusive.*

 As the decree was granted in this case without any proof at
all, it is clearly without authority of law, and erroneous.

The next and more difficult question is, whether a decree of
divorce once granted by a Court of competent jurisdiction,
can be for any reason disturbed?   We have no hesitation in
holding, that when such a decree is assailed for fraud, and the
fraud clearly made out, it may be vacated.   For instance,
suppose the Defendant had never been served with the pro-
cess of the Court at all, but the proof of service, whether by
return of the Sheriff or affidavit of a private party, was to-
tally false, would it be any answer to a husband or a wife
to say that your remedy is against the Sheriff for a false re-

turn?—that the decree is final, your marriage bonds are severed, and the Court cannot reunite you by annulling the decree? I would be very reluctant to concede such incapacity in the courts of equity. It would be robbing them of a large share of the comprehensive and penetrating jurisdiction which they have so beneficially exercised over the affairs of men, by detecting and preventing the most artfully designed schemes of fraud, and punishing the perpetrators; and by protecting the weak against the aggressions of the powerful. Nor do I see anything in the peculiar nature of the decree that should make it in an ordinary case more conclusive than the other judgments and decrees of the courts. We are told that the parties may marry again, and that the consequences would be disastrous to the inheritance of estates and the legitimacy of offspring. Yet it is the constant practice of the Courts to refuse to recognize as binding the decrees of Courts of other States dissolving marriage contracts when they are irregularly granted, letting the consequences of subsequent marriages take care of themselves. See *Jackson vs. Jackson*, 1 *John. R.*, 424; *Pawling vs. Bird, Ex'rs*, 13 *John. R.*, 192; *Borden vs. Fitch*, 15 *id.*, 121, and the numerous cases cited therein. Would it not be infinitely more to be regretted that the rights of innocent parties should be destroyed, and they perhaps branded with the infamy of being adjudged adulterers, and stripped of their estates by the conclusiveness of a decree obtained by fraud, than that the shame or misfortune should fall upon parties and their children, who, with indecent haste, or censurable indiscretion, have formed matrimonial alliances without first satisfying themselves on such vital considerations. It is not to be denied that the most circumspect may be led into such difficulties. Yet when a misfortune is incurred, and must be borne by some one, it is but justice that it should not fall upon those who are free from all blame, and whose legal rights are fixed and certain. We think the Court had the power to set aside this decree on a case of fraud or collusion being made out in the procurement of it.

We had no doubt on the argument of the case that improper appliances were used by Clarke to induce the Defend-

ant to suffer a default, and a full examination of the papers strengthens the view we then entertained. The furnishing the Defendant with a draft of an answer that raised no issue, is not satisfactorily cleared up, and the payment to him of fifteen hundred dollars by Clarke through the medium of the certificate of deposit left with the banker in St. Paul, is admitted. The attempt of Clarke to show that it had relation only to the Defendant not interposing any claim to the custody of the child, is in direct conflict with the written conditions that Clarke made concerning its delivery to the Defendant when he left it with the banker, which were that it was to be "delivered over to Defendant when a decree of divorce and awarding the possession of the child to Plaintiff was made by the Court, subject to a proviso that the Defendant should not interpose any other defence in the action than the answer already served," which was the imperfect answer, the draft of which had been previously furnished him. Supposing the explanation of Clarke to be true, that it was paid only to prevent the Defendant from making claim to the child, it is difficult to see how that made it any the less a fraud upon the Court. One of the most important considerations in such cases, is, which parent shall have the care and custody of the infant children; and the public has even a deeper interest in the decision of that question, than in the matter of the divorce. The training and culture of the youth of a State may exert a much more potential influence upon its future posperity and character for good or evil, than the separation of a man and his wife whose habits are formed, and whose social status is determined. This delicate trust is the special province of a court of equity and cannot be taken from it by the collusion of the parties.

As to the agency of Clarke for the Plaintiff, we have only to say that he appears in the record to have come to the place of her residence in the relation of her protector against the aggressions and misconduct of her husband. That he has assumed the active management and control of her person, and her suit. That she has evidently recognized him as so acting all along, and if in his zeal in her behalf he has overstepped the bounds of propriety, and the Court below has been imposed

upon by his acts, she cannot be permitted to derive a benefit therefrom by a mere denial of any knowledge on her part of the particular act. She is bound by its effect.

We cannot allow this case to pass without regretting that it became necessary to establish the rule we have here laid down under the circumstances presented by this record. The conduct of the Defendant has been throughout criminally censurable, and nothing but the most imperative sense of duty in asserting the correct practice in the beginning, has influenced us in sustaining his motion to open the decree.

Order affirmed.