LOUIS ROBERTS,

*vs.*

THOMAS GRACE, *et al*

On the 14th February, 1849, S., being the owner of a tract of land which included that claimed by plaintiff, and also that claimed by defendants, executed and delivered to plaintiff a warranty deed of one acre, thus described: "One acre of land in the S. E. ¼ of section 32, town 29 north of range 22, west of the 4th principal meridian, extending from the base of a bench of land north of the town of St. Paul, adjoining on the east by landed by James Thompson, and on the west by land deeded by John Randall to Henry M. Rice. said acre of land so described, being two chains in breadth and five chains in deptn.·

Said deed was duly recorded March 2d, 1849. August 3d, 1849, S. conveyed to H., under whom defendants claim, one acre of land in section 31, town 29, range 22. Plaintiff's deed was intended to locate his acre in said sec. 31, and so as to overlap on the west a part of the acre conveyed to H. Said land on the east of the tract so claimed by plaintiff to have been intended to be conveyed to him, had not been deeded to or by said Thompson, but he was, at the date of plaintiff's deed, in the possession and occupancy thereof, claiming title thereto, under an understanding with the holder of the legal title, that he was entitled to it. The boundaries of the tract so claimed by him were readily ascertainable, and such tract was intended to be described by the words in said deed "landed by James Thompson," and it adjoined the acre claimed by plaintiff on the east, for nearly, but not entirely the length thereof. Prior to plaintiff's deed, he was not in possession of the said tract so claimed by him. Said west boundary given in said deed, was wholly untrue. *Held*, that, assuming that the boundary therein given as "the base of a bench of land north of the town of St. Paul," sufficiently designated the location of the tract intended to be conveyed thereby, to affect H. with constructive notice of the fact that its description in said deed, as being in sec. 32 aforesaid, was a mistake for sec. 31; and also, that said boundary was a sufficiently certain monument to ascertain the southerly line of the land claimed by plaintiff, whereby the boundaries on the east and south of the land claimed by plaintiff, as referred to in said deed, could be found, and were ascertainable with sufficient certainty; yet, it being nevertheless still left wholly uncertain as to what is meant by "*breadth*" and "*depth*," the data for locating the north and west lines are wanting, and that H. had no notice, constructive or otherwise, of plaintiff's title. H.'s deed, therefore, though subsequent to that of plaintiff, conveyed a good title, as against plaintiff, to so much of the land claimed by plaintiff, as its description covers.

Plaintiff testified "that there were some shanties on the land when I bought; there were three; they paid me rent after I bought." *Held*, that, assuming this to have been prior to H.'s purchase, nevertheless, there being no visible change of possession to indicate a change in the title, such acts would not be constructive notice to H.; nor would acts done on the land by plaintiff, prior to his purchase.

Where the description given in a deed of a boundary which is a necessary boundary to ascertain the land intended to be conveyed, is so untrue that the land as claimed *cannot* agree with it, and the

deed would require to be reformed in equity before it will pass any estate as between the parties, such deed cannot be constructive notice to a subsequent purchaser.

The plaintiff, being in possession of certain premises in the city of St. Paul, brought this action in the district court for Ramsey county, seeking to reform the descriptions in certain deeds forming a part of his chain of title, to quiet his title to the premises described in such deeds as sought to be corrected, and to bar the defendants from asserting any claim thereto   The defendants answered, setting up title in themselves to certain premises described in the answer, (and including a portion of the premises claimed by the plaintiff,) and denying title in the plaintiff to any part thereof.  The action was referred, and upon the trial, April 25th, 1867, it was stipulated between the parties that the defendants might amend their answer, by adding a prayer that their title to the premises described therein be quieted, and the plaintiff be barred from asserting any claim thereto.  It was further stipulated, that judgment should be rendered between the parties upon the merits, without regard to the actual possession at the time the action was commenced, and that the defendants should be entitled to the same judgment as if the relief prayed, in the answer as amended, had been asked for in a complaint.

The referee ordered judgment that the plaintiff's deeds be corrected and his title quieted, except as to that portion of the premises described in the deeds as corrected, which was included in the description of the premises claimed by the defendants in their answer, and as to such portion, that the defendants' title thereto be confirmed and quieted.  The plaintiff moved in the district court for a new trial, and appeals to this court from the order denying his motion.

Roberts v. Grace, et al.

The findings of the referee are so fully stated in the opinion of the court, that it is unnecessary to insert here any portion of the report, except the following diagram, showing the relative positions of the tracts claimed by the plaintiff and defendants, respectively:

LAMPREYS for Appellant.

JAMES GILFILLAN for Respondents.

*By the Court,*—RIPLEY, CH. J.—The referee, who tried this case, finds that, on the 14th February, 1849, H. H. Sibley, being the owner of a large tract of land in Ramsey county, Minnesota, embracing the land claimed by the plaintiff, and also the land claimed by the defendants, executed and delivered to plaintiff a warranty deed of one acre of land thus described: "One acre of land in the S. E. ¼ of section 32, town 29, north of range 22, west of the 4th principal meridian, extending from the base of a bench of land north of the town of St. Paul, adjoining on the east by *landed* by James Thompson, and on the west by land deeded by John Randall to Henry M·

Rice; said acre of land so described, being two chains in breadth and five chains in depth;" which was duly recorded March 2d, 1849. Afterwards, Feb. 22d, 1858, said Sibley and his wife, to release her dower, by deed duly recorded, quitclaimed to plaintiff by the same description, except that, instead of "*lanaed by*," the words "*land deeded to*" are used. That on the 3d August, 1849, said Sibley conveyed to Peter Hayden, defendants' grantor, by deed duly recorded, one acre of land in sec. 31, town 29, range 22, and shown in the plan which is in the case. That plaintiff's deed was intended to locate his acre in said section 31, and so as to include a part of the Hayden acre as shown in the plan.

"That said land claimed by plaintiff has never been fenced or inclosed, and has been, ever since the year 1850, used more or less by the plaintiff in quarrying stone, and has been, ever since the year 1850, in the actual possession of said plaintiff; that, prior to the year 1850, it has not been used as a quarry aforesaid, and has not been in the actual occupancy of the plaintiff prior to the year 1850. That the land on the east of the said tract had never been conveyed to James Thompson, but that he was in the possession and occupancy thereof, claiming title thereto, under an understanding with the holder of the legal title, that he was entitled thereto, at the time of the execution of the deed to plaintiff; that the boundaries of the Thompson land can be readily ascertained, and that the same is the land referred to in said two first mentioned deeds as the land deeded to James Thompson. That the boundary described in said two first mentioned deeds as 'the base of a bench of land north of the town of St. Paul,' was a sufficiently certain monument to ascertain the southerly line of the land claimed by the plaintiff, whereby the boundaries on the east and south of the land claimed by the plaintiff, as referred to in said deeds, can be found and are ascertain-

able with sufficient certainty; that the west and north lines of the land claimed by the plaintiff can only be ascertained by measurement, taking the distances given in the said deeds, and cannot be found by reference to any known monuments, except as before stated." The west boundary, as given in the deeds, appears to have been wholly untrue, there being no land to which such description is applicable.

As a conclusion of law, the referee finds, that said Hayden had not any notice, constructive or otherwise, of the said title of plaintiff, and therefore Hayden's deed cuts out plaintiff, to the extent of the strip of land of Hayden's acre, which overlaps plaintiff's, as shown on the plan.

The only question in the case is, whether the record of plaintiff's deed was constructive notice to Hayden that the description in it was intended to include part of the acre purchased by him. Plaintiff claims, indeed, in opposition to the finding of the referee, that he was, at the time of Hayden's purchase, in actual possession of the land he claims; therefore, that, for this reason also, Hayden is to be affected with constructive notice. In another part of his brief, however, he says, in accordance with the finding of the referee, that plaintiff took possession in 1850. Reference to the case, as settled, discloses no earlier possession. Plaintiff testifies, indeed, "there were some shanties there when I bought; there were three; they paid me rent after I bought;" and also, "I had the yellow rock opened near twenty years ago," which, however, if such rock were on the land, (of which there is no proof,) as it must have been before his purchase, would be immaterial, and the receipt of rent equally so since it is not stated that any rent was paid prior to Hayden's purchase; and if there had been, the attornment to the grantee, of a tenant holding under the grantor, would

not supply the want of registry, because there is no visible change of possession to indicate that there had been a change of title. *Veazie vs. Parker*, 23 *Maine*, 170. The finding of the referee seems, therefore, to be correct.

. As to the record, the plaintiff insists that the description is sufficiently definite and certain to operate as constructive notice; that it is inconsistent in the referee to find that the south and east boundaries of his land are ascertainable with sufficient certainty, and yet to find that Hayden had no notice; because, if the south and east boundaries are known, the north and west boundaries can (he says) be readily ascertained by measurement.

Taking the fact to be as the referee has found, that it could be sufficently ascertained from this description, that the base of the bench was plaintiff's southern boundary, and that his land adjoined Thompson's acre, as the same is laid down on the plan, on the east, it is nevertheless obvious, that the plaintiff is mistaken in saying that the north and west boundaries can readily be ascertained by measurement. Plaintiff's south line is the base of the bench. It must of course extend northerly therefrom as far as Thompson's south line,—but how much farther? His case requires that the description shall *not* be held to mean that his land and Thompson's, adjoin throughout. But whether they do or not, and if in part only, whether for one chain, for five, or any less distance, would equally satisfy the description. That is to say, it is wholly uncertain what is meant by the words "*breadt ɩ*" and "*depth,*" and therefore the data for locating the north and west lines by measurement are wanting. And this is what we understand the referee to mean by saying, that plaintiff's north and west lines " can *only* be ascertained by measurement, taking the distances mentioned in the deed."

Roberts v. Grace, et al.

We should indeed be willing, apart from the referee's findings, to affirm the order denying a new trial, on the ground that, on the evidence, "the base of a bench of land north of the town of St. Paul," is not a sufficiently certain monument whereby to ascertain the southerly (and all important) boundary line of plaintiff's acre. Supposing these words to be sufficient to show that the location in sec. 32 was a mistake for "31," and to designate the bench intended, nevertheless they do not of themselves imply or indicate, in *what* direction from the base of the bench plaintiff's land was meant to extend. The description must be sufficient to enable any other person, as well as the parties, to locate the land by it, by proper inquiries, with reference to matters of public notoriety, as to deeds, maps, or marks upon the land. Inquiry, we assume, would ascertain which bench was meant by these words, and, by actual survey, where its base was; but whether the base were the south or north boundary of the acre, the words give no clue, either of themselves, or by reference. Unless the eastern boundary line is known, the southern cannot be ascertained. It is plain that the words " adjoining on the east by ' *landed* ' by James Thompson," are not a sufficiently certain monument to ascertain plaintiff's easterly line. We may assume, as the referee finds, that the boundaries of Thompson's land, as he was living on and claiming it, can be readily ascertained, and that said land is that referred to, *as the land deeded to James Thompson.* [This is his construction, and, we presume, a correct construction of " *landed by.*"] Still, as the land had not been deeded to Thompson, it will not be claimed that Hayden was bound to put that meaning upon the words in question. Nor was he bound to reject the words " *landed by* " as unmeaning, for the reason that, when rejected, the residue, *i. e.* " adjoining on the east by James Thompson," would cover Thompson's title, such as

it was. That would be to hold that Thompson's possession affects Hayden with constructive notice of what *he* claims, *for the purpose* of affecting him with constructive notice of what *plaintiff* claims.

There is nothing here, that we can see, on all the evidence, that would amount to notice.

Reference is made to the testimony of Curtis, who made the plan, as proving that these boundaries are readily ascertainable by measurement; but taking the whole of his testimony, it shows that the witness construed "5 *chains in depth*" to mean, extending five chains northerly from the base of the bench; for he says, "having ascertained the easterly line of Roberts' acre, the survey was conducted so as to produce an acre five chains long and two chains wide, running back from the base of the bench." This is assuming to determine what the deed leaves uncertain. To admit this construction, the description must needs be considered as referring "merely to what was supposed by the immediate parties to be the land described in the deed," in which case our recording acts would afford no protection whatever to purchasers. *Tymason vs. Bates*, 14 *Wendell*, 672–676.

In this case the rule applies, that where the description includes several particulars, *all* of which are necessary to ascertain it, no estate will pass, except such as agrees with every particular. But if the description is sufficient to ascertain the estate, although the estate cannot agree with all the particulars, yet it will pass. 2 *Wash. Real Prop. Book* 3, *ch.* 5, *sec.* 37. *Jackson vs. Loomis*, 18 *Johnson*, 81. Here, the description of a western boundary is necessary to ascertain the tract intended to be conveyed. But the plaintiff's land, as he claims it, *cannot* agree with the description of its western boundary, as given in the deed; for the description is wholly untrue, and requires reforma-

tion in equity before the deed will pass any estate as between the parties. Where this is the case, it cannot of course be constructive notice to a subsequent purchaser. The plaintiff urges, however, that the deed, and the power of attorney under which it was executed, were enough to put Hayden on inquiry; and that that, which is sufficient to put on inquiry, is considered in equity as amounting to notice. The power of attorney is said to refer to land in sec. 31, and not in sec. 32; but wherein this appears therefrom, we are unable to see; and how a deed, which would not pass any estate, as between the parties thereto, can be held to be notice to put a subsequent purchaser on inquiry, we are equally unable to perceive. The most that can be said of this description, giving plaintiff the advantage of all the referee's findings of fact, is, that by measurement, the north and west boundary lines *may* be so located as to give him what he claims. But they may also, and, for aught that appears in this case, with equal reason, be so located, by measurement, as to give him a very different tract; and notice of what may possibly affect the subject of his purchase, is not notice sufficient to put a person upon inquiry. 2 *Lead. Cas. in Eq.*, 3d *Amer. Ed. p.* 144.

That notice to put a man on inquiry, is good notice. means that where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it. *Ibid.*, *p.* 139. That is, the information must be sufficient to enable him to conduct that inquiry to a successful termination, for otherwise the general rule, that a title shall not be impeached by uncertainties, will intervene. (*Ibid.*, *p.* 161, *and cases cited.*) The general principle, that nothing can operate as notice, which is not full and explicit enough to give the requisite information, applies with as much force where a deed is recorded, as when it is read or exhibited; and hence a purchaser will not be bound by the record of a

conveyance which fails to disclose or specify the property granted. *Ibid.*, *p.* 179. If, upon the face of a deed as registered, the property purporting to be conveyed be not truly and properly described, the record cannot affect subsequent purchasers with constructive notice. *Seeley vs. Holland*, 1 *Swan*, 396. The fact, of which this deed is claimed to be sufficient information to lead Hayden to, is, that the acre in question was intended to be conveyed by it; and yet the extent of the information it could give, is, that as to that, it is wholly uncertain on its face.

Order affirmed.