## John Simmons

### *vs.*

## David Fuller, William L. Banning, *et. al*

F. intended to mortgage to S. an undivided half of lots 6 and 7 in block 21, and 3, 4, 5 and 6 in block 44, in Rice and Irvine's addition to St. Paul, and a saw-mill situated on said lots 6 and 7; but, instead thereof and by mutual mistake of the parties, the following description was inserted in the mortgage, which was duly recorded: " one undivided half of lots 3, 4, 5 and 6 in block numbered 21, in Rice and Irvine's addition to St. Paul, being the same premises described in a deed from Alpheus G. Fuller to Holmes Amidon, dated October 15, 1852, and recorded in the office of the register of deeds for Ramsey county, book " E," of deeds, page 10, there being a saw-mill on the premises." The premises described in said deed from Fuller to Amidon, were lots 6 and 7 in block 21, and lots 3, 4, 5 and 6 in block 44, in said addition. *Held*, that the record of said mortgage was not notice to a subsequent purchaser of what was intended to be conveyed by the mortgage.

This action was brought in the district court for Ramsey county to correct the description of property contained in a mortgage executed by the defendant Fuller, and to foreclose the mortgage as reformed. The defendant Banning, and the defendants May and Galusha, assignees of Banning, answered the complaint, alleging title in themselves to the premises against which the plaintiff sought to enforce his mortgage, and asking judgment that their said title be quieted, &c.

The action was tried by the court without a jury, and upon the judge's findings the plaintiff recovered judgment, from which the defendants Banning, May and Galusha appeal.

By stipulation between the parties the return made to this court consisted only of the pleadings and the findings in the court below. These are sufficiently stated in the opinion.

HENRY J. HORN, for Appellants.

GILFILLAN & WILLIAMS, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The district judge finds as facts that Fuller, on the 15th February, 1854, by mortgage of that date, mortgaged to Simmons, the following premises situate in Ramsey county, and described in said mortgage, as follows, viz.: " one undivided half of lots 3, 4, 5 and 6 in block numbered 21, in Rice and Irvine's addition to St. Paul, being the same premises described in a deed from Alpheus G. Fuller to Holmes Amidon, dated October 15, 1852, and recorded in the office of the register of deeds for Ramsey county, in book E, of deeds, page 10, there being a saw-mill on the premises;" that said mortgage was recorded in said registry, June 4th, 1855.

That the said description is erroneous, and does not in fact describe the premises intended to be mortgaged, and was inserted by the mutual mistake of the parties thereto.

That the premises intended to be mortgaged were an undivided half of the premises described and specified in said deed from Fuller to Amidon, viz.: lots 6 and 7 in block 21, and 3, 4, 5 and 6 in block 44, all in Rice and Irvine's addition to St. Paul; that the saw-mill referred to, and intended to be covered by said mortgage, was situated on lots 6 and 7 in said block 21, and that said saw-mill was intended to be covered and conveyed by the mortgage.

That on July 24th, 1856, Fuller mortgaged to Banning the undivided half of lots 3, 4, 5 and 6 in block 44, and of lots 6

and 7 in block 21, in Rice and Irvine's addition aforesaid; that said mortgage was given and received in good faith for money actually advanced to Fuller by Banning, and that the mortgaged premises were pointed out by the mortgagor to him at the time of making this loan;. that the said mortgagee had no actual notice of plaintiff's mortgage.

As a conclusion of law he finds, that the record of the plaintiff's mortgage was notice to Banning of plaintiff's interest in the premises intended to be conveyed by said mortgage, and that plaintiff is entitled to judgment that his said mortgage be corrected and reformed according to the intention aforesaid of the parties, and that the premises intended to be inserted therein be sold to satisfy the amount due thereon.

It is evident, as the plaintiff admits, that .his mortgage passed, of the premises meant to be mortgaged, only the undivided half of lot 6 in block 21, and so much of said sawmill as stood thereon; and that it required reformation in equity before it could affect the rest of the property intended to have been mortgaged.

If, indeed the words "being the same premises, &c.," could be construed into, "meaning and intending hereby to convey the premises," described in the deed referred to, or the like,—the mortgage, on the principle that its language must be taken most strongly against the grantor, would be held to purport to pass the premises described in the deed, that description being inconsistent with the description in the mortgage, and being of a greater property.

But this would not only be too forced a construction, but it would not accord with the facts; for the parties did not mean to mortgage the six lots described in the deed, but the undivided half thereof.

It is true that it is found that it was intended to mortgage *the saw-mill*, but unless, which does not appear, it was not so

affixed to the soil as to be real estate, it would have required such special words to mortgage the whole of it without mortgaging more than an undivided half of the lots on which it stood, that it seems incomprehensible that parties, with such an intention, should not have made some attempt to express it.

If it were not proved to have been personalty, we are, in-inclined to suspect an error in the wording of the finding of the judge.

Taking it as it stands, which we must do, the intention is found to be to mortgage the undivided half of the lots, and the whole of the saw-mill.

What the mortgage does grammatically say, by the reference in question, is, that the undivided half of lots 3, 4, 5 and 6, in block 21, is what is described in said deed, and that there is a saw-mill thereon.

The mortgage may have been *meant* to say, " the undivided half of lots, 3, 4, 5 and 6, in block 21, &c., which lots are those described in said deed, and whereon there is a saw-mill ; " but it is plain that neither form of words would have sufficed to pass the undivided half of the six lots in said deed described, nor the said mill.

Anything more than the description by lot is but a mis-recital, and the description must control.

The description in the mortgage, however, having been inserted by the mutual mistake of the parties, the plaintiff had thereupon an equity to have it reformed, so as to conform to what was intended ; whereupon, as between the parties to it, it would be a lien on the premises, upon which it was intended to be a lien, from the date of its execution. And the only question here is, whether the plaintiff is entitled to this relief against Banning.

If Banning had notice, actual or constructive, when he took his mortgage, that the parties meant, the one to give, the

other to take a mortgage on the undivided half of lots 6 and 7 in block 21, and of lots 3, 4, 5 and 6 in block 44, and that the description actually inserted in the mortgage was so inserted by the mutual mistake of the parties thereto, the plaintiff is thus entitled, otherwise not.

The court finds that he took his mortgage in good faith, and that he had no actual notice of plaintiff's mortgage.

A mortgage, which must be reformed to convey what was meant to be conveyed, is, as to that, when so reformed, an unrecorded mortgage, and plaintiff would be considered, relatively to Banning, as one who had a recorded mortgage on the undivided half of lot 6, block 21, and an unrecorded mortgage on the undivided half of lot 7, and of lots 3, 4, 5 and 6 in block 44, and of said saw-mill.

Such unrecorded mortgage is void against a subsequent purchaser in good faith and for value.   *Gen. Stat. ch.* 40, *sec.* 21.

The statute leaves the question, who is a *bona fide* purchaser, to be determined by the rules of law applicable to the case, 6 *Minn.* 458.

The district judge, proceeding upon the principle that one who has constructive notice is not a *bona fide* purchaser, finds for the plaintiff, because, in his opinion, the record of plaintiff's mortgage was such notice to Banning.

Sec. 28 of said chapter provides, that " the record  * . * of any instrument properly recorded shall be taken and deemed notice to parties." We are to look at this case, therefore, precisely as if Banning had read the mortgage; and, if he had, we do not think he could have been held to be thereby affected with notice, the the description therein had been inserted, by the mutual mistake of the parties, instead of the undivided one-half of lots 6 and 7, block 21, and of 3, 4, 5 and 6, block 44, and also the saw-mill on said lots 6 and 7.

The plaintiff's position is, that it was notice thereof suffi-

cient to put him on inquiry. In *Roberts vs. Grace*, 16 *Minn.* 126, we said that we could not see how a deed, which would not pass any estate as between the parties thereto, could be held to be notice to put a subsequent purchaser on inquiry. As already remarked, the plaintiff admits, and it is unquestionable, that, as to all that the district judge finds was meant to be mortgaged, except the undivided one-half of lot 6, this is such a deed; and we do not see that the fact, that it does pass that undivided one-half of said lot, makes the above remark inapplicable to it.

The plaintiff contends that the record not only suggested that there was a mistake in the description, but pointed out the way by which the character of the mistake could be ascertained.

We think it does neither. It was notice of its contents according to their legal effect, which, as we have already seen, was notice of a mistake in the reference.

The plaintiff thinks it pointed out the way in which the character of the mistake could be ascertained, because, as he says, it stated that the mill stands on the premises intended to be conveyed; and as Banning must have known that it stood partly on lot 6, and partly on lot 7, it would be apparent that there was a mistake, either in specifying the lots, or in the statement that the saw-mill stood on the premises intended to be conveyed.

But the plaintiff cannot assume that Banning knew on what lots the saw-mill stood. The court does not so find, and it is not to be inferred from the fact that, at the time that Fuller mortgaged to him the undivided one-half of said six lots, viz.: July 24th, 1856, he pointed out the mortgaged premises to him. His mortgage did not purport to convey the said mill, nor does it appear that there was then any mill on said lots.

The court, moreover, bases itself on the record, and that

Simmons v. Fuller et al.

only, as notice, and that only is before us. The plaintiff would not contend that it would be apparent from that alone, that there was a mistake as above mentioned. And if not, a purchaser would not be put upon inquiry as to what the mistake was.

The plaintiff is also mistaken in supposing that the record states that the mill stands on the premises intended to be conveyed.

· It states either that it stands on the undivided half of lots 3, 4, 5 and 6 in block 21, or that it stands on the lots described in the deed to Amidon, neither of which are the premises intended to be conveyed, but whichever construction is put on the language of the mortgage in this respect, neither, of itself, would suggest any mistake in the description of the premises intended to be conveyed.

On the whole, we see no reason for making this mortgage, or the record thereof, an exception to the principle, stated in Roberts vs. Grace, that where a deed would be required to be reformed in equity before it will pass any estate as between the parties, it cannot be constructive notice to a subsequent purchaser.

If the deed cannot, the record cannot be ; for the "principle that nothing can operate as notice, which is not full and explicit enough to give the requisite information, applies with as much force where a deed is recorded, as where it is read or exhibited." *Le Neve vs. Le Neve,* 2 *Lead. Cases in Eq. p.* 127, 179.

We adopt in this case, as we did in Roberts vs Grace, the language of that work, as applicable here ; "That notice to put a man on inquiry, is good notice, means that, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it, *Ib. p.* 139 ; that is, the information must be sufficient to enable him to conduct that inquiry to a

successful termination ; for otherwise, the general rule that a title shall not be impeached by uncertainties, will intervene for his protection. *Ib. p.* 161, *and cases cited.*"

The plaintiff takes the ground, that the record is to be deemed to be sufficient information to lead Banning to the fact that the undivided one-half of six lots described in Amidon's deed, and the whole of a saw-mill situated on two of them, were intended to be mortgaged to the plaintiff, and that the actual description was inserted by the *mutual* mistake of the parties. Yet the extent of the information as to *any* error, that it could give was, that on its face, and considering the Amidon deed as if recited in it at length, it was *possible* that the mortgagor meant to convey something else than the specified undivided one-half of said four lots; but what else is wholly uncertain and matter of conjecture ; and as to whether there was any *mutual mistake*, it offered no clue whatever. At the same time it was just as possible on the record that the only mistake was in the reference, and that Fuller meant to mortgage the undivided half of said four lots.

The statement, that there was a saw-mill on the premises, would be just as true, according to its legal effect, applied to that undivided half, as to the undivided half of the six lots, and on the face of the mortgage the error would appear, as probably, at least, to have arisen in Fuller's supposition that the Amidon deed conveyed said one-half of said four lots, as of said six.

To hold this record notice of the intentions of the parties would, it seems to us, be infringing on the rule, that a purchaser's title is not to be impeached by uncertainties.

Nothing could be more inequitable than, because the law affects a purchaser with constructive notice of the record, to hold him affected also with constructive notice of the real intention of the parties to a deed, where the record of it utterly

fails to disclose what that was.    That would be a premium on negligence not of the purchaser, but of the parties to the deed.

The court further finds that Banning foreclosed his mortgage, becoming the purchaser at the sale of the mortgaged premises, and that they were not redeemed; that thereafter he mortgaged the same to defendant Knox, and subsequently conveyed them, subject to said mortgage, in trust for the benefit of his creditors, and the court finds that the record aforesaid was notice to Knox and said assignee.    But, if it was not to Banning, there is of course no pretence for saying that it was to them.

The judgment must be reversed; and since, for reasons which will appear from what has been observed upon the findings of fact, we should be unwilling to direct a judgment to be entered on them, a new trial will be had.