# DANIEL H. CASWELL

*v.*

## ANN M. CASWELL.

*Filed at Springfield March 23, 1887.*

1. REMOVAL OF CAUSE *to Federal Court — non-resident defendant in suit to set aside decree for divorce.* On bill filed by a wife against her husband, to set aside a decree of divorce obtained by the latter through fraud, he will not have the right to have the cause transferred to the Circuit Court of the United States, on the ground of his being, at the time, a non-resident of the State. The statute of the United States providing for the removal of causes to the Federal Court has no application to such a case.

2. BILL TO IMPEACH DECREE *for fraud—whether it will lie.* Where a decree of divorce has been obtained by fraudulent means and false representations as to the parties' domicile and residence, which gave the court an apparent jurisdiction in a case where there was in fact no rightful jurisdiction, the injured party may, within a resonable time after discovery of the fraud, have such decree set aside, on bill filed to impeach the same.

3. In this case, a husband residing in this State sent his wife to her father's home, in New York, on a visit, and prevented her return by fraudulent misrepresentations. While the wife was so absent, the husband filed his bill for a divorce in a different county from that of his domicile, and had publication of notice made to his wife, on his false affidavit that she was a non-resident of the State, and procured a decree of divorce on his own false testimony as to his residence and the conduct of his wife, which facts he concealed from her. It was *held*, that the wife, on learning the facts, had the right to impeach the decree of divorce by a bill for that purpose, and have the same set aside, although the husband had in the meantime been again married.

4. LIMITATIONS—LACHES—*decree on constructive notice—when it will become final, in respect to the suing out of a writ of error.* A decree against the defendant in a chancery case, where there is no personal service, but only notice by publication, is liable to be opened at any time within three years, on the application of the defendant. After the expiration of three years such decree will become final, the same as if obtained in a case where there is personal service. The defendant will have five years from its becoming thus final in which to prosecute a writ of error or file a bill of review. Such a decree, when it shall become final, is not any more so than in a case of personal service.

5. SAME—*when the statute will begin to run.* Where there is a cause of action arising from a fraud, the Statute of Limitations will not begin to run, in equity, until the discovery of the fraud by the use of reasonable diligence.

6. SAME—*fraudulent concealment—as affecting the running of the statute.* Where a husband, after fraudulently procuring a decree of divorce from his wife, fraudulently conceals from her the facts, which would enable her to find where such divorce has been procured, and take steps to have it set aside, she, under our statute, will have five years after discovery of her cause of action in which to file her bill to impeach such decree for fraud.

7. So where the husband, in 1869, fraudulently obtained a decree of divorce in this State against his wife, whom he had sent out of the State, and after the filing of his bill wrote to her that he was going to Mexico, to be gone some time, and some time after the decree wrote to her that he had obtained a divorce in the State of Indiana, which was false, and she, after years of investigation, learned the real facts in May, 1883, and it appeared that she was poor, and had to labor to obtain the means for her support and with which to prosecute her inquiries, and she filed her bill, about seven months after learning the fact of the divorce, to impeach and set aside the decree for fraud, it was *held*, that under the circumstances she was not chargeable with *laches* in filing the bill.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Piatt county; the Hon. C. B. SMITH, Judge, presiding.

Mr. CHARLES W. THOMAS, for the appellant:

Defendant's plea setting up section 19, chapter 22, of the Revised Statutes, as a bar, ought to have been sustained. The decree, after three years, ought to be held final. *Lyon* v. *Robbins*, 46 Ill. 276; *Lawrence* v. *Lawrence*, 73 id. 577; *Southern Bank* v. *Humphrey*, 47 id. 247.

That the remedy given the defendant to correct an erroneous decree, by this section of the statute, is exclusive, and supersedes all common law remedies, reference is made to *Ward* v. *Severance*, 7 Cal. 126; *Roberts* v. *Landecker*, 9 id. 262; *Fuller* v. *Edings*, 11 Rich. 239; *Butler* v. *State*, 6 Ind. 165; *Victory* v. *Fitzpatrick*, 8 id. 281; *McCormack* v. *Railroad Co.* 9 id. 283; *Cole* v. *Muscatine*, 14 Iowa, 296; *Hagan* v. *Essex County*, 12 Cush. 475; *Babb* v. *Mackey*, 10 Wis. 371; *Wooley* v. *Wooley*, 12 Ind. 663.

The person of defendant in the divorce suit was not where the process of the court could reach her. She was therefore

a non-resident. After desertion, the husband's domicile is not that of the wife.

As the court had jurisdiction to render the decree of divorce, and as others now have an interest in the stability of the decree, it should not be set aside after other relations have attached on the faith of the same. *Greene* v. *Greene*, 2 Gray, 361; *Horner* v. *Fish*, 1 Pick. 435; *Peck* v. *Woodbridge*, 3 Day, 30; *Gelston* v. *Codwise*, 1 Johns. Ch. 195; *Parish* v. *Parish*, 9 Ohio St. 534.

As to the distinction between cases involving fraud in giving jurisdiction, and fraud committed after the jurisdiction is acquired, see *Edson* v. *Edson*, 108 Mass. 591; *Railroad Co.* v. *Holbrook*, 92 Ill. 297; *Greene* v. *Greene*, 2 Gray, 361.

The court should have transferred the cause to the United States Circuit Court. The petition was in due form, accompanied by a proper bond. *Empire Co.* v. *Richards*, 88 Ill. 404; *Gaines* v. *Fuentes*, 92 U. S. 10; Dillon on Removal of Causes, sec. 76.

There was too great delay in filing the bill, where the effect is to bastardize innocent children, the fruits of the second marriage. *Dunn* v. *Dunn*, 4 Paige, 425; Bishop on Marriage and Divorce, sec. 751.

Mr. CHARLES HUGHES, and Mr. S. R. REED, for the appellee:

A decree of divorce obtained by fraud is void, has no binding effect, and may be impeached and set aside, even though a subsequent marriage by one of the parties may have been consummated, and children born by such marriage. *Adams* v. *Adams*, 51 N. H. 388; *Cumstock* v. *Adams*, 23 Kan. 513; *Edson* v. *Edson*, 108 Mass. 590; *Graves* v. *Graves*, 36 Iowa, 310; *Rush* v. *Rush*, 46 id. 648; *State* v. *Whitcomb*, 52 id. 85; *Borden* v. *Fitch*, 15 Johns. 12; *Crouch* v. *Crouch*, 30 Wis. 667; *Johnson* v. *Coleman*, 23 id. 452; *True* v. *True*, 6 Minn. 458; *Jackson* v. *Jackson*, 1 Johns. 424; *Lawrence* v. *Lawrence*, 73 Ill. 577; Bishop on Marriage and Divorce, (6th ed.) sec. 753, p. 637.

Lapse of time is no bar to bringing suit to impeach a ,decree including divorce decrees obtained by fraud, when cause is shown for the delay, and that the party seeking to impeach such decree is not guilty of *laches.* But the proof must be clear that the party is entitled to the relief prayed for. *Adams* v. *Adams,* 51 N. H. 388; *Sloan* v. *Sloan,* 102 Ill. 581; *Oakley* v. *Hurlburt,* 100 id. 204; *Lequatte* v. *Drury,* 101 id. 81; *Furlong* v. *Riley,* 103 id. 631; *Warden* v. *Cornell,* 105 id. 178; *Collier* v. *Beers,* 106 id. 150; *Cleaver* v. *Green,* 107 id. 67; *Boyden* v. *Reed,* 55 id. 458; *Castner* v. *Walrod,* 83 id. 171; *Johnson* v. *Coleman,* 23 Wis. 452.

The Statute of Limitations will not begin to run until the discovery of the fraud complained of, especially where the adverse party conceals the fraud. *McIntosh* v. *Saunders,* 68 Ill. 131; *International Bank* v. *Jenkins,* 104 id. 155; *Henry County* v. *Drain Co.* 52 id. 301; *Wear* v. *Skinner,* 46 Md. 257; *Railroad Co.* v. *Mayo,* 67 Maine, 470; Rev. Stat. chap. 83, sec. 22.

The husband can not treat his wife as a non-resident when he sends her out of the State, and she is absent by his will or procurement, and not by her own. Her residence or domicile is the same as his. *Babbitt* v. *Babbitt,* 69 Ill. 277; *Kennedy* v. *Kennedy,* 87 id. 250; 2 Bishop on Marriage and Divorce, (6th ed.) secs. 118, 125, 126, 753c.

Service on defendant, by newspaper notice, fraudulently given, though in compliance with the statutes, ought to be considered as no notice at all. *Adams* v. *Adams,* 51 N. H. 338; *Edson* v. *Edson,* 108 Mass. 590; *Graves* v. *Graves,* 36 Iowa, 310; *Rogers* v. *Coleman,* 3 Am. Dec. 733; *Robison* v. *Ward,* 8 Johns. 86; 1 Story's Eq. sec. 252, note a.

Under the laws of Illinois, on the question of jurisdiction in divorce cases, we submit that a party applying for a divorce must bring his suit in the county where he actually resides. Rev. Stat. chap. 40, sec. 5; *Way* v. *Way,* 64 Ill. 406; *Babbitt* v. *Babbitt,* 69 id. 277.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in the nature of a bill of review, brought by Ann Mary Caswell, against Daniel H. Caswell, in the circuit court of Piatt county, in this State, on December 22, 1883, to impeach and annul a decree of divorce in favor of the latter, against the former, entered at the September term, 1869, of said court, on the ground of its having been fraudulently obtained. Upon final hearing, on bill, answer, and proofs taken by both parties, the circuit court decreed the relief prayed. On appeal to the Appellate Court for the Third District, the decree was affirmed, and the defendant appealed to this court.

The bill in the divorce suit of Daniel H. Caswell, against Ann Mary Caswell, set forth the marriage of the parties in 1862; that the complainant was a resident of Piatt county, in this State; that he lived and cohabited with the defendant until December 10, 1865, when she deserted him, and had, for more than two years past, persisted in her desertion, wherefore he prayed for a divorce. Attached to the bill was the affidavit of the complainant, that Ann M. Caswell was a non-resident of Illinois, and a resident of the State of New York. There was no service of summons on the defendant in that suit, but only notice by publication. There was no appearance of the defendant, and the decree was by default. There was a reference to the master, to take proofs, whose report contained the testimony of the complainant, of the marriage, of living together as man and wife until December 10, 1865, when defendant left complainant without any cause or provocation, and had continued to remain away, separate and apart from him, ever since; that she left him against his will; that he lived in Piatt county when the bill was filed; that it was about two years since he had heard from the defendant, and that he did not then know where she was. Also the testimony of one Bixby, that the parties lived together

until December, 1865; that he always understood that complainant's wife had deserted him; that she had lived separate and apart from him since she left him, in December, 1865. This is substantially all that was shown by the report. Its date was February 18, 1869.

The testimony in the present case shows, without any attempt at contradiction, that the complainant and the defendant took up their residence at Cairo, in this State, about the month of October, 1866, and lived there together, keeping house, until in March, 1867, when the defendant sent the complainant on a visit to her parents, in Brooklyn, New York; that he desired her to remain there until after her confinement; that she reluctantly consented to go, but did not want to remain there; that he promised to send for her when proper for her return; that in her correspondence with him she was continually urging him to let her return, and he refused to let her do so; that a constant correspondence was kept up between the parties, as shown by eighty-one letters exhibited in evidence, from defendant to complainant, between the dates of March 26, 1867, and December 6, 1868, and which are corroborative of the foregoing testimony.

Appellant made two applications, in the circuit court, to remove this cause to the United States Circuit Court for the Southern District of Illinois, the first being based on section 2 of the act of Congress of 1875; the second, on the act of 1866,—third subdivision of section 639. These sections may be found on pages 1860 and 1864, Starr & Curtis' Statutes. The court denied the applications, because the sum of $500, exclusive of costs, did not appear to be involved in the controversy. This ruling of the court, it is insisted, was erroneous. It is said, the statement of the petition that there was such a sum involved, should govern. Although that be the statement of the petition, it manifestly appears not to be true from the nature of the proceeding, it being but to set aside a mere decree of divorce, and the matter in suit not being

measureable by dollars and cents. There was not the money interest even of costs involved in the divorce decree, that decree ordering that the complainant should pay the costs. These statutes, in our opinion, do not apply to such a case as this, and the applications were properly denied.

It is insisted there was error in not sustaining the plea of the defendant setting up section 19, chapter 22, of the Revised Statutes, as a bar to the suit. That section provides, that within three years after a decree in a case of notice by publication, and not personal service, the defendant, on petition, may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendant had appeared in due season and no decree had been made; and "the decree shall, after three years from the making thereof, if not set aside in the manner aforesaid, be deemed and adjudged confirmed against such non-resident defendant." It is contended that the remedy which is hereby provided was all the remedy which the complainant had in this case,— that at the end of three years, any decree so rendered upon notice by publication, becomes, by the express provision of law, final and conclusive, unless the defendant appears in the same case and asks to be let in to defend. The contrary view has been taken by this court in *Lyon* v. *Robbins*, 46 Ill. 276, and *Southern Bank of St. Louis* v. *Humphreys*, 47 id. 227, where it was held, that a decree thus rendered, where there was notice by publication, and not personal, the decree was provisional, only, and not final, in fact, until at the expiration of three years, and that the defendant had five years after it thus became final in fact, within which to prosecute a writ of error or file a bill to impeach it,—that is, as we understand, to place the decree, at the end of three years, on the same footing of a decree in a case of personal service, and not give to it any higher effect. Those cases but simply announce the general rule as to when bills of review must be filed to impeach a decree. In *Sloan* v. *Sloan*, 102 Ill. 581,

the same general rule is repeated, with recognition of there being exception thereto.

There is no doubt, from the evidence, that the decree of divorce was fraudulently obtained. It is insisted, however, that if that be so, all of fraud that there was, was in obtaining the decree by false evidence, and that for such a fraud a judgment or decree can not be impeached in a separate and independent proceeding, (citing *Greene* v. *Greene*, 2 Gray, 361, among cases as so deciding,) and admitting the rule to be otherwise where the fraud complained of is a fraud whereby the court was given a colorable jurisdiction of the defendant's person, where there was not real jurisdiction of it,—and it is denied that there was any fraud of this latter kind in the case. *Edson* v. *Edson*, 108 Mass. 590, illustrates the distinction between these two classes of cases,—of fraud in giving jurisdiction, and fraud committed after the jurisdiction had, in fact, attached. In this last named case, the court sustained a petition filed to set aside a decree of divorce in a case where there was no domicile of the plaintiff to give the court jurisdiction, but a fraudulent representation that there was such domicile. In speaking, there, of *Greene* v. *Greene, supra,* which had been cited adversely to the petition, the court say : "Strictly speaking, the decision is an authority only for the proposition that a decree of divorce can not be called in question, or invalidated, on the ground of fraud in its procurement, in a separate and independent libel, subsequently brought, between the same parties, when it appears that the first decree was entered after due notice to the adverse party, followed by an adjudication upon evidence offered in support of the allegations of the libel. To this extent there can be no doubt that the decision is in harmony with sound principle, and with the adjudicated cases." And the court goes on to distinguish the case then in hand, saying the petition did not seek to set aside a decree rendered against the defendant in a suit of which the court had full jurisdiction, of the pendency

of which she had due notice, but in a proceeding of which the court had no jurisdiction, but only an apparent jurisdiction, founded on a false allegation of domicile.

We are of opinion that there was fraud, here, in both the respects named,—fraud in the giving of false evidence, and fraud with respect to giving jurisdiction. At the time of the institution of the divorce proceedings and obtaining the decree of divorce, the defendant was not a non-resident of the State of Illinois, but was a resident of the State. She was absent from the State temporarily, only, where her husband had sent her, willing and desirous to return to him in this State, and being prevented from so doing by himself. In such case the husband can not treat his wife as a non-resident, but her residence and domicile are the same as his. Bishop on Marriage and Divorce, (6th ed.) secs. 118, 125, 126, 753; *Babbitt* v. *Babbitt*, 69 Ill. 277; *Kennedy* v. *Kennedy*, 87 id. 250. Yet the complainant, by his false affidavit that the defendant was a non-resident of this State, and a resident of the State of New York, induced the court to take cognizance of the case, upon notice to the defendant only by publication, where, under the fact as existing, there could have been jurisdiction of the person of the defendant only upon personal service of summons upon her, or of a copy of the bill, together with a notice of the commencement of the suit. Furthermore, under the statute, a party applying for a divorce must bring his suit in the county where he resides. (Rev. Stat. chap. 40, sec. 5; *Way* v. *Way*, 64 Ill. 406; *Babbitt* v. *Babbitt*, 69 id. 277.) The proceeding was in Piatt county. The complainant represented in his bill, and in his testimony, that he was a resident of Piatt county at the time the bill was filed. We are satisfied, from the proof, that he was not then a resident of Piatt county.

We find, then, that there was no jurisdiction of the person of the defendant in the divorce suit; that by the perpetration of a fraud by the complainant therein, there was given ap-

25—120 ILL.

parent jurisdiction over the defendant; that the notice by publication was not due and legal notice, and should be taken as no notice,—so that the decree was rendered against the defendant without notice of the suit or opportunity to defend against it. We think the appellee is entitled to the relief she asks, unless she is barred of her suit by the delay in bringing it. The divorce decree having been at the September term, 1869, of court, and the bill, here, not filed until December 22, 1883, there would seem to have been too long a delay, at first blush; but we think it to have been sufficiently accounted for. Appellee did not learn the fact of the existence of the divorce decree until in May, 1883, and there is nothing of the want of due diligence attributable to her in not sooner discovering its existence. Not knowing before that there was such a decree, she could not, of course, before then have taken any steps to have the decree set aside.

As has been observed, the constant, frequent correspondence by letter was kept up between appellant and appellee, until December 6, 1868. Appellant on that day,—six days after the filing of his bill for divorce,—wrote a letter to appellee, dated Taylorville, in Christian county, Illinois, saying he was about to start for Mexico; thought he would do well and come home with some money in the spring; says he feels bad about going, and she need not write until she heard from him, as he does not know the name of the place he was going to; he remits $5, and says he can not spare more, but a person named was owing him $20, and he would direct him to send it to appellee; thinks appellee can get along with the $5 he sends and the $20, until she hears from him again. She is asked not to feel bad in not hearing from him, and to take good care of the baby,—a daughter having been born to appellee on September 29, 1867. On January 14, 1869, appellant was married, in Ohio, to one Louisa C. Broadwell. He says that after the decree he was re-married to this woman. After December 6, 1868, appellee heard nothing from appellant until

October 22, 1869, when he wrote her a letter, dated Evansville, Indiana, October 22, 1869, saying he is prepared to let her know the reason of his long silence was absence from the country. Also, that by the laws of that State he had procured a divorce from her, on the ground of incompatibility of temper and disposition, and thereafter held himself free from her forever; that he would go to Mexico, and she need not expect to see or hear from him again. Thereupon appellee instituted search throughout the State of Indiana, and ascertained that no such divorce had been granted by any court of that State. By this, appellee learned that she had been told an untruth, and she was justified in relying upon it as such, and in. thinking that no divorce had been obtained. Appellee then set on foot, search and inquiry to find appellant, and from that time on not only used due diligence,—constant and persistent in such search and inquiry,—but her efforts in that direction were extraordinary. Without going into detail, we will say,. that she had made declaration she would find appellant if he was on the face of the earth, and greater efforts for the making good of that assertion hardly could have been made by a woman in her situation, than were made. Her diligent endeavors were finally crowned with success, in 1881, in finding that a person of appellant's name was residing at Nashville, Tennessee. She wrote to him, and received in reply a letter from him, there, of the date of September, 1881, in which he expresses surprise that appellee should address him as her husband, and states that she well knows that he procured a divorce from her some twelve years ago. This was evidently a reference to his letter of October 22, 1869, from Evansville, Indiana, in which he said he had procured a divorce from appellee, in that State, and was but a repetition of the same untruth of that letter. She had a right to so regard it, and it afforded no clue whatever to lead her to the discovery of this decree of divorce. In May, 1883, appellee went, herself, to Nashville, to see appellant, and there,

May 15, 1883, as she says, she, for the first time, obtained the knowledge of the decree of divorce, never having before had any intimation or suspicion of such a decree, more than was afforded by these two letters from appellant, of October 22, 1869, from Evansville, Indiana, and of September, 1881, from Nashville, Tennessee.

It is said, that diligence in search for the appellant was of no moment,—that the search and inquiry should have been for the decree. But having no information as to the decree, and there being nothing to put her upon her inquiry respecting it, there was no duty incumbent upon appellee in that respect. The finding of appellant did prove to be the means of the discovery of the decree.

Where there is a cause of action arising from a fraud, the Statute of Limitations will not begin to run, in. equity, until the discovery of the fraud. (2 Story's Eq. Jur. sec. 1521 a.) And section 22, chapter 83, of the Revised Statutes,—of our Statute of Limitations,—provides: "If a person, liable to an action, fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same, discovers that he has such cause of action, and not afterwards." There is that in this case which looks toward such fraudulent concealment. Appellant certainly misled appellee, by his falsehood to her, that he had obtained a divorce in the State of Indiana.

We are satisfied no *laches* was imputable to appellee up to the time when she discovered the existence of the decree, in May, 1883. Appellee should have acted, thereafter, with reasonable promptness in her application to set aside the decree. She was not required to take instant action. She should have been allowed a reasonable time within which to bring her bill. She lived in a foreign State. She was a poor person, of a delicate constitution, sick much of the time, dependent on her own labor, with some assistance from her father, for the sup-

port of herself and child, and had expended considerable in the search for appellant. She was at Nashville, Tennessee, when she found out such a decree had been rendered. Remaining there awhile, she returned to her home in Brooklyn, New York. Some time was occupied in earning and raising the means necessary for the bringing of her suit. She then came to the State of Illinois, and on December 22, 1883,— seven months and seven days after her knowledge of the decree,—she filed the present bill. Under the circumstances we do not think there was any unreasonable delay in bringing the suit, and we are of opinion that its maintenance should not be held to be barred by the lapse of time which appears here.

The facts of appellant's re-marriage, of there being children thereof,—although we do not see in the record proof of such children,—and of the hardship which will result to innocent persons from setting aside the decree of divorce, are dwelt upon as objections to the granting of such relief. Such ill consequences we can appreciate, and must regret; but yet they do not form reason sufficient for a denial of the exercise of the court's power to vacate such a decree obtained by fraud, as has often been determined. *Crouch* v. *Crouch*, 30 Wis. 452; *Rush* v. *Rush*, 46 Iowa, 648; *Whitcomb* v. *Whitcomb*, id. 437; *Edson* v. *Edson, supra;* Bishop on Marriage and Divorce, secs. 751, 753 a; *True* v. *True*, 6 Minn. 458; *Comstock* v. *Adams*, 23 Kan. 513; *Adams* v. *Adams*, 51 N. H. 388.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT, dissenting.