Fay Riddlesbarger, Appellant, v. Rufus Riddlesbarger et al., Appellees.

Gen. No. 42,885.

Opinion filed November 6, 1944. Rehearing denied November 21, 1944. Released for publication November 24, 1944.

ARTHUR ABRAHAM and RALPH J. GUTGSELL, both of Chicago, for appellant.

ECKERT & PETERSON, of Chicago, for appellees; TOM LEEMING, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Fay Riddlesbarger, appellant (hereinafter called plaintiff), filed a complaint for divorce, upon the grounds of desertion and adultery, against Rufus Riddlesbarger, appellee (hereinafter called defendant, unless designated as Riddlesbarger). The other defendants were alleged to have assets belonging to Riddlesbarger. At the close of plaintiff's evidence defendants' motion for a finding in their favor was allowed and the complaint was dismissed for want of equity. Plaintiff appeals.

The complaint alleges, *inter alia,* that defendant obtained a decree of divorce against plaintiff in the City Court of Aurora, on February 5, 1932, upon the grounds of desertion; that said decree was void, as that court did not have jurisdiction of the subject matter of the divorce proceeding; that defendant and plaintiff were residents of Chicago and had never been residents of the city of Aurora; that the matrimonial domicile of plaintiff and defendant had never been in that city; "that in any event, no such desertion could have occurred or did occur within the territorial limits of the City of Aurora;" that "said decree for divorce did not purport to find that desertion occurred within the territorial limits of the City of Aurora;" that plaintiff had never deserted defendant, and that said decree was obtained upon the false and fraudulent testimony of defendant and one other witness. Attached to the instant complaint and made a part thereof is the record of proceedings in the City Court of Aurora. The complaint therein, verified by Riddlesbarger, alleges that he "is an actual resident of

the said County of Kane, and is now, and has been for ten years last past, a resident of the State of Illinois;'' that ''Fay Riddlesbarger, wholly regardless of her marriage covenants and duty, afterward, on February 28, 1930, wilfully deserted and absented herself from your Orator, without any reasonable cause, for the space of one year and upwards; and has persisted in such desertion, and yet continues to absent herself from your Orator.'' The decree found, *inter alia,* that Fay Riddlesbarger had submitted herself to the jurisdiction of the court and filed her answer to the bill; that the complainant had filed a proper affidavit of emergency and that Fay Riddlesbarger had expressly consented to an immediate hearing of the bill; ''that said complainant, Rufus Riddlesbarger, *is now* an actual resident of the City of Aurora, County of Kane, and State of Illinois;'' that ''the defendant herein without reasonable cause on February 28, 1930 wilfully deserted and absented herself from the complainant, Rufus Riddlesbarger, and has from said date persisted in said desertion.''

Defendants' motion for a finding in their favor admits the following facts: Plaintiff and defendant were married in Chicago in 1919 and two children, both daughters, were born of the marriage. Defendant owns substantially all of the stock in two corporations that are engaged in the manufacture and distribution of contraceptive devices, and his income is about $90,000 per annum. He is a lawyer but does not practice his profession. Plaintiff and defendant took up their residence in Chicago about November, 1922, and they lived together as husband and wife until February 28, 1930. In 1925 they moved to 3974 Lake Park avenue and were residing there on February 28, 1930, at which time defendant compelled plaintiff to go to New York, where she lived until Christmas of 1930, when she returned to her home. During her absence one Verma Hansen moved into the family domicile

and resided there with defendant *and the two young daughters*. She lived there openly as the mistress of defendant. After plaintiff returned home defendant and Verma Hansen removed from the family home, but ten days later defendant again forced plaintiff to go to New York and he and Verma Hansen returned to the family home, where they lived in a state of adultery until about March 1, 1931, when plaintiff again returned to the family home. Defendant and Verma Hansen then removed from the home and plaintiff lived there with her two daughters. Plaintiff was inexperienced in business matters. To quote from Judge LaBuy's opinion: "The plaintiff herein was trusting and confiding, while the defendant was masterful and compelling." In October, 1931, defendant caused to be prepared a property settlement agreement, by the terms of which plaintiff and defendant waived any rights in each other's property and defendant agreed to pay plaintiff the sum of $100 a month for her own support and $50 a month for the support of each of the daughters. In January, 1932, defendant, through a former classmate, a lawyer engaged in the practice of his profession in the city of Aurora, caused to be filed in the City Court of Aurora a complaint for divorce in which defendant charged plaintiff with desertion. Before that proceeding was started defendant tried to make plaintiff institute divorce proceedings against him in some place other than Chicago, but she refused to do so. He told her that he could not afford the publicity of divorce proceedings in Chicago, that he had arrangements made for a divorce in Aurora, and that he had chosen an attorney for her. On January 29, 1932, defendant took plaintiff and one Meryl Foley in an automobile to Aurora. Neither plaintiff nor defendant had ever resided in that city. Defendant, through his former classmate, employed a lawyer practicing in Aurora to act as an attorney for plaintiff in the said proceedings, and he was paid for his serv-

ices by defendant. Plaintiff had never met that lawyer before that day. Before leaving Chicago defendant told plaintiff that if she did not accompany him to Aurora, or if she made a defense to the said divorce proceedings, he would take the two daughters and go to South America, and that she would be left penniless and destitute. As the result of the threats, plaintiff accompanied defendant to Aurora. Upon arriving there she attempted to consult with the lawyer that defendant hired to represent her, but defendant and his former classmate prevented her from doing so. She told them that she wanted to employ independent counsel of her own choice, but defendant again threatened that if she interposed any defense to the divorce proceeding or employed independent counsel he would carry out the threats that he had made to her. No process was served upon her. From the time of their arrival in Aurora until the hearing of the cause but a very brief period of time elapsed. Because of the threats made by defendant she signed an answer to the complaint, which answer had been prepared without consultation with her. Defendant and his former classmate sought to prevent her from going into the courtroom on January 29, 1932, but they finally permitted her to sit in the back room, where she was able to see the proceedings but unable to hear what took place. She did not participate in the court proceedings. Defendant filed an affidavit that the matter was an emergency one, and the trial court immediately heard evidence. Defendant testified that he was a resident of the city of Aurora and that plaintiff had deserted him, and Meryl Foley testified that plaintiff and defendant were living separate and apart. Defendant took plaintiff back to Chicago the same day. That defendant's testimony was perjury and was made for the sole purpose of inducing the judge presiding in the City Court of Aurora to believe that the cause of action, the alleged desertion of defendant by plaintiff,

had occurred within the territorial limits of that city, stands admitted. In June, 1932, defendant married Verma Hansen and sometime in 1937, while defendant was still married to her, one Roberta Eames became the mistress of defendant; and in September, 1937, she and defendant resided together at the Broadmoor hotel in Colorado Springs, Colorado, where they held themselves out as man and wife. The evidence tends to show that sometime in the fall of 1937 defendant obtained a divorce from Verma Hansen in the State of Wyoming. He lived for a time with Roberta Eames in Chicago, in New Orleans, and in Colorado, but there is no evidence in the record that they were ever married.

At the conclusion of the evidence in the instant case, Judge LaBuy, when he sustained the motion of defendants for a finding in their favor, delivered an opinion, in which he states:

"The evidence offered herein discloses that at the time of the filing of said bill of divorce in said city court, the defendant, Riddlesbarger, was not a resident of the City of Aurora nor of the County of Kane in which said City of Aurora is situated. The evidence herein further shows that Fay Riddlesbarger, the plaintiff herein, was induced by threats of the said defendant not to interpose any defense to said bill for divorce; that said defendant employed an attorney for the plaintiff herein, and that said attorney, who pretended to represent plaintiff in said former proceeding, was in reality the agent of the defendant with reference to said proceedings; that there never was any service of process upon the plaintiff herein but that said attorney employed by the defendant entered the appearance of plaintiff herein and appeared in court and represented to the court that the plaintiff herein did not desire to contest said proceedings.

"The institution of the divorce proceedings in said city court and the actions of the defendant with ref-

erence to the fraudulent prevention of the plaintiff herein from contesting the said bill for divorce, were the acts of said Rufus Riddlesbarger and the plaintiff in no way participated or joined in the fraudulent representations to the said court in order to lead that court to assume jurisdiction of the defendant's bill for divorce. The defendant herein so played upon the credulity of the plaintiff that she was led to believe the fraudulent statements made by the defendant, and thus did not oppose the supposed breaking of the marriage ties between the plaintiff and defendant. The plaintiff herein was trusting and confiding, while the defendant was masterful and compelling, and thus the defendant was enabled to obtain a decree of divorce based upon a supposed residence in the City of Aurora when in fact the defendant was not such a resident, and based upon a supposed desertion of the defendant by plaintiff when in truth and in fact there was no basis for such charge of desertion against the plaintiff herein. The defendant was resolved in some manner to rid himself of his lawful wife, and in so doing acted in the perfidious manner disclosed by the record herein.

"This case presents a situation where said Rufus Riddlesbarger in making a false representation in his complaint and in his sworn testimony that he was a resident of Aurora practiced a flagrant fraud upon the said city court of Aurora. *By virtue of that fraud that court took unto itself jurisdiction of the person of said Rufus Riddlesbarger, which jurisdiction that court could not have exercised if said Riddlesbarger had truthfully informed that court of the fact with reference to his residence. If those facts had been divulged to the court, it would have immediately held as a matter of law that the court did not have jurisdiction of the person of said Rufus Riddlesbarger, and consequently would have promptly dismissed said action for want of jurisdiction.*" (Italics ours.)

After reviewing certain cases, Judge LaBuy further states: "Defendant claims that the plaintiff is estopped to question said decree of divorce because of her *laches* and participation in the said decree of divorce after its entry." The court after citing certain acts of plaintiff after the entry of the decree of divorce, concludes: "The court holds that plaintiff is estopped by her conduct *in pais* from asserting any rights she may have had because of the claimed invalidity of the 1932 divorce decree."

Defendants state, in their brief: "The only question for decision is whether the chancellor . . . erred or abused his discretion in concluding that an estoppel *in pais* existed."

Plaintiff contends that "the divorce decree of the City Court of Aurora . . . is void." That court "had no power to enter judgments or decrees in civil cases where the alleged cause of action did not arise within the territorial limits of the City of Aurora. . . . The alleged cause of action for divorce was the desertion of Rufus Riddlesbarger by Fay Riddlesbarger. That cause of action did not arise within the territorial limits of the City of Aurora. Neither of the parties had ever resided in the City of Aurora, either together or separately."

In *Werner v. I. C. R. R. Co.*, 379 Ill. 559, the Supreme court states (pp. 560, 561):

"The Appellate Court affirmed a judgment of the city court of East St. Louis (309 Ill. App. 292) and leave to appeal was granted by this court. *After the appeal was granted the appellant obtained leave of court to file a motion which for the first time raised a question of the jurisdiction of the city court.* The motion was taken with the case and each of the parties filed supplemental briefs on the jurisdictional issues.

"The facts necessary to a consideration of the motion are, that in 1936 plaintiff Paul W. Werner resided in De Witt county and was in the employ of the de-

fendant Illinois Central Railroad Company as a brakeman. While so engaged in defendant's railroad yards in Pana, Christian county, he received injuries. He instituted this suit in the city court of East St. Louis against the defendant claiming there was liability under the Federal Employer's Liability act. Defendant maintained an office in East St. Louis and service was had upon it within the territorial limits of the city.

"Defendant's motion to dismiss raises a question as to the territorial jurisdiction of the city court. It is contended that under the constitution and statute, city courts have no jurisdiction over a case where the cause of action declared upon arose without the territorial limits of the city." (Italics ours.) The court, after reviewing the constitutional provisions, the statutes, and the decisions bearing upon the question before it, concludes (p. 566):

"The city court of East St. Louis being without jurisdiction of the subject matter, the judgment is void and of no effect. Jurisdiction could not be conferred by the consent of the parties and was not waived by defendant's appearance and participation in the trial. It is a question that may be raised at any time, even on appeal. *Town of Audubon v. Hand,* 223 Ill. 367; *Town of Kingston v. Anderson,* 300 id. 577." The judgments of the city court and the Appellate court were reversed. In *Smith v. L. & N. R. R. Co.,* 381 Ill. 55, the Supreme court followed the *Werner* case, and held that where a city court was without jurisdiction because the cause of action arose outside the territorial limits of the city, it was without jurisdiction to consider a petition filed in such suit to enforce an attorney's lien.

In the instant case it stands admitted that the alleged desertion did not arise within the territorial limits of the city of Aurora. Therefore the judgment entered by the City Court of Aurora was void and without any force whatsoever. Plaintiff and defend-

ant were still husband and wife after the entry of that decree, and she had the right to file her complaint in the instant cause. Judge LaBuy states, in his opinion, that the trial judge of the City Court of Aurora would not have taken jurisdiction of the person of Riddlesbarger if the latter had told the truth as to his residence; that if Riddlesbarger had told the truth in that regard the trial court would have held, as a matter of law, that it had not jurisdiction of the person of Riddlesbarger and would have dismissed the cause. Undoubtedly, the City Court of Aurora had jurisdiction of the person of Riddlesbarger, and if he had told the truth the trial court would have dismissed the cause, not because it lacked jurisdiction of the person of Riddlesbarger, but because it lacked jurisdiction of the subject matter, *viz.*, the charge of desertion.

In their brief defendants contend that the instant proceeding is a collateral attack upon the judgment of the City Court of Aurora upon the ground of want of jurisdiction in that court of the subject matter, and that, under the law, the want of jurisdiction must appear from an inspection of the judgment roll itself and no evidence *dehors* the record is admissible upon the point. We will consider this contention, although it is not consistent with another contention several times stated in their brief, that the only question for this court to decide is whether the chancellor erred or abused his discretion in concluding that an estoppel *in pais* existed; nor is it consistent with the admission made by the able counsel for defendants upon the oral argument, that plaintiff had the right to file her complaint and if she proved the fraud alleged therein she would prevail, provided that she were not estopped by her conduct after the entry of the decree of divorce. Plaintiff contends that the law is settled that where a trial court is induced to enter a decree by fraud or misrepresentation of fact, which, if true, would give the court jurisdiction of the subject matter, the decree

may be collaterally attacked at any time and in any proceeding.

In *People v. Sterling,* 357 Ill. 354, 364, 365, the court states:

"Notwithstanding these authorities and this well established principle, the appellant contends that because the decree in the Sangamon county circuit court was procured by fraud it must be treated as a nullity. In considering this point it must be borne in mind that there are two classes of frauds drawn in question in cases of this kind: First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment, and other chicanery. The first variety of fraud will invalidate the decree, rendering it an entire nullity. On the other hand, it is well established that the second class has no such legal effect. One of the earlier cases in this State on the point is *Caswell v. Caswell,* 120 Ill. 377, which cites the case of *Greene v. Greene,* 2 Gray, 361, hereinabove quoted from, and also the case of *Edson v. Edson,* 108 Mass. 590. The rule is laid down as herein stated. In the case of *Burton v. Perry,* 146 Ill. 71, the following statement is found: 'Counsel for appellees charge that the proceeding of 1869 was a fraud perpetrated upon the courts by Cook and that no such contract of sale as is therein set up ever existed. . . . But if it were true that Cook was guilty of the fraud charged against him, it was not such a fraud as goes to the jurisdiction of the court rendering the decree of 1870 and therefore is unavailable in a collateral attack upon the proceedings of 1869.' In *Evans v. Woodsworth,* 213 Ill. 404, we said: 'Courts of equity will not, however, set aside a decree upon the ground that it was obtained by false evidence but only for fraud which gives a court colorable jurisdiction over the defense presented.' In *Beck*

*v. Lash,* 303 Ill. 549, this court said: 'There are two kinds of fraud as applied to judicial proceedings: Fraud in obtaining an order or decree by false testimony, and fraud which gives the court only colorable jurisdiction. It is only the latter that renders collateral attacks effective or renders a decree void as to all parties affected.' The same rule is again stated in *Foutch v. Zempel,* 332 Ill. 192.''

In the late case of *Herb v. Pitcairn,* 384 Ill. 237, 241, the court states that where there is a want of authority over the subject matter the judgment is open to successful impeachment, if such fact is made to appear from the face of the record or by matters *dehors.*

The case of *In re Estate of Goldberg,* 288 Ill. App. 203, is directly in point, and the judgment of the Appellate court is strengthened by the fact that our Supreme court denied an appeal therefrom (288 Ill. App. xv), and a petition for *certiorari* was denied by the Supreme Court of the United States (302 U. S. 693). In that case, Philip Goldberg was a resident of Highland Park, Lake county, Illinois. His wife, Minnie Libby Goldberg, was adjudged insane on August 22, 1906. On June 28, 1909, Goldberg filed his bill for divorce in the Circuit court of Cook county, in which he alleged that his wife was guilty of extreme and repeated cruelty prior to the time that she became insane, and he further alleged that he was a *bona fide* resident of Cook county. Upon the hearing he testified falsely that he was an actual resident of Cook county and thereby obtained a decree for divorce. The wife was represented by a guardian *ad litem* appointed by the court. Shortly after Goldberg obtained that decree he married Goldie F. Davidson, in Kenosha, Wisconsin; and they lived together as husband and wife until the death of Goldberg. Letters of administration were then taken out on his estate in the Probate court of Lake county. Minnie Libby Goldberg, through her attorney, asked the Probate court to declare that the

divorce proceedings in Cook county were null and void for the reason that Goldberg and his attorney had perpetrated a fraud upon the Circuit court of Cook county in that at the time of said divorce proceedings Goldberg was not a resident of Cook county but was a resident of Lake county, and the Circuit court of Cook county did not have jurisdiction of the case. After a hearing the Probate court found against Minnie Libby Goldberg. The case was appealed to the Circuit court of that county and after a hearing that court entered an order finding that at the time of the divorce proceeding Goldberg was not a resident of Cook county but a resident of Lake county; that Goldberg and the attorney and guardian *ad litem* of Minnie Libby Goldberg in the divorce proceeding had perpetrated a fraud upon the court and induced the court to take jurisdiction in the case and grant the divorce; that the court was without jurisdiction to hear said case; that the decree entered was null and void, and that Minnie Libby Goldberg is the lawful widow and an heir at law of Philip Goldberg, deceased. Goldie Goldberg appealed from that decree. The Appellate court concluded that the evidence clearly showed that at the time Goldberg filed his suit for divorce in Cook county and at the time of the hearing of the cause in that court he was not a resident of Cook county but was a *bona fide* resident of Lake county. In its opinion the court states (pp. 207, 208):

"The question then arises in what court can the validity of this divorce proceeding be questioned. Is it necessary to file a bill of review, or some other appropriate action in Cook county to question the validity of this divorce, or can it be raised, as it is done, in this case by a collateral attack? It is insisted by the appellant that a divorce decree procured by fraud cannot be collaterally attacked and the recitals in the decree are conclusive in our courts. There are many cases that hold that this is the correct rule, but there

are exceptions to this rule and the main one is that where the fraud which gives the court, only colorable jurisdiction, renders the decree void and subject to collateral attack. From the evidence in this case, it is our opinion that Philip Goldberg perpetrated a fraud upon the circuit court of Cook county, and gave it only colorable jurisdiction to hear his case, and that the decree rendered by the said court was void and subject to collateral attack. Our courts have frequently held that a decree will not be set aside upon the ground that it was obtained by false evidence, but only for fraud that gives the court colorable jurisdiction. *Evans v. Woodsworth,* 213 Ill. 404; *Caswell v. Caswell,* 120 Ill. 377.''

After reviewing further authorities the court states (p. 213):

''It is our conclusion that the circuit court of Lake county properly found that Philip Goldberg, at the time he filed his suit for a divorce and the hearing of the same was not a resident of Cook county, Illinois, but was a resident of Lake county, Illinois, and that he perpetrated a fraud upon said court in procuring said divorce, and that said court did not have jurisdiction of the parties and the subject matter of the suit, and that the same was null and void.''

The decree of the Circuit court was affirmed save as to that part which found that the attorney who appeared as guardian *ad litem* for Minnie Libby Goldberg was also guilty of perpetrating the fraud on the court at the time of the divorce proceeding, the Appellate court holding that that part of the decree was not sustained by the proof.

If we are right in holding, as we do, that the decree of the City Court of Aurora is void, it is unnecessary for us to consider the court's holding, upon which he based his ruling, that ''plaintiff is estopped by her conduct *in pais* from asserting any rights she may have had because of the claimed invalidity of the 1932 di-

vorce decree.'' However, in view of the undisputed fact that defendant and his coconspirators perpetrated a brazen fraud upon the City Court of Aurora and thereby induced the judge of that court to enter the divorce decree, we feel impelled to state that, even if it could be held that the decree of that court is not absolutely void, nevertheless, equity should not lend its aid to the wrongdoer, who seeks, in effect, to have the decree held valid. It has been often stated that the doctrine of estoppel is called into being for the prevention of fraud, and that it should never be exercised in aid of fraud. As bearing upon the conduct of plaintiff after the entry of the divorce decree, it must be noted that she supposed that the divorce decree was valid, until August, 1942, when she was informed by her attorney that in his opinion the decree was void.

The judgment order of the Circuit court of Cook county is reversed, and the cause is remanded with directions to overrule defendants' motion for a finding in their favor and for further proceedings not inconsistent with this opinion.

*Judgment order reversed, and cause remanded with directions.*

SULLIVAN, P. J., and FRIEND, J., concur.