ANIL K. BIDANI, Plaintiff-Appellant, v. EDMUND J. LEWIS *et al.*, Defendants-Appellees.

First District (3rd Division)  No. 1—95—3156

Opinion filed November 27, 1996.

McCullogh, Campbell & Lane, of Chicago (Charles Drake Boutwell, of counsel), and John F. O'Meara, of Park Ridge, for appellant.

Ross & Hardies, of Chicago (Jon K. Stromsta, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

On July 22, 1991, plaintiff, Dr. Anil K. Bidani (Dr. Bidani), filed a complaint for breach of contract and constructive trust against defendants, Dr. Edmund J. Lewis (Dr. Lewis), Edmund J. Lewis and Associates, S.C. (Lewis and Associates), Renal Consultants, Limited (Renal), American Medical Supply Corporation (AMS), and Circle Medical Management, Inc. (Circle). Dr. Bidani claimed ownership and profit interests in Renal, AMS, and Circle as a result of alleged oral agreements he made with Dr. Lewis. Because Dr. Bidani had disavowed any interest in those companies in his previous divorce action, the trial court applied the doctrine of judicial estoppel and entered summary judgment in favor of defendants.

On appeal, Dr. Bidani asserts that (1) the doctrine of judicial estoppel was improperly invoked; and (2) the trial court erred in denying him leave to file a second amended complaint. We affirm.

The issue in this case is whether judicial estoppel should be applied where the same party testified that he held no interest in businesses in a prior lawsuit and now claims in this suit that he does have an interest in the same businesses.

In his first amended complaint, Dr. Bidani alleged as follows. He had been employed by Lewis and Associates to perform medical duties as a nephrologist at Rush-Presbyterian-St. Luke's Medical Center (Rush) from October 1979 through August 1990. In 1981, Dr. Bidani, Dr. Lewis, and two other Rush nephrologists made an oral agreement to propose to Rush that its dialysis services be transferred to an off-site private facility (the dialysis enterprise), which would be owned and operated by the four doctors. The dialysis enterprise would consist of two components: (1) freestanding dialysis machines (dialysis machine unit) and (2) medical supplies for home dialysis patients (medical supply unit). To amass the necessary funds for the dialysis enterprise, the four doctors agreed to provide professional services at the Chicago Kidney Center, a private medical center that was independent from Rush. The professional fees earned at the Chicago Kidney Center would be held by Dialysis Services, Ltd. (Dialysis Services), until enough money was accumulated to establish the dialysis enterprise. The fees went to Dialysis Services from 1979 through 1981, then to Renal Consultants, Limited. Dr. Bidani received over $100,000 from Renal through 1988.

When implementation of the dialysis enterprise was deferred indefinitely in 1983, Dialysis Services was liquidated and Dr. Bidani received $37,674 as his share of the distribution. The other two doctors ended their relationship with Dr. Lewis, but Dr. Bidani and Dr. Lewis orally agreed to continue their 1981 agreement.

The dialysis enterprise's medical supply unit was activated in 1983 through AMS (American Medical Supply Corp.), which bought medical supplies directly from medical suppliers and distributed them to the dialysis enterprise's home dialysis patients. Dr. Bidani received $72,120 from AMS from 1983 through 1986. In 1988, Rush transferred its 10 freestanding dialysis units to Circle, which allegedly received $150,000 from the dialysis enterprise's medical supply unit. In August 1989, Dr. Bidani discovered that the profits of Renal, AMS, and Circle had exceeded $6 million from 1982 through 1990.

Based on those allegations, Dr. Bidani claimed that he was entitled to an equal ownership interest in Circle and an equal profit share of Renal, AMS, and Circle. He alleged that Dr. Lewis breached his oral contract with Dr. Bidani and illegally converted the assets he held in constructive trust for Dr. Bidani.

Defendants filed a motion for summary judgment on the basis that Dr. Bidani was judicially estopped from proceeding with this action because his position was inconsistent with his sworn testimony in his 1986 dissolution of marriage action against his ex-wife, Dr. Nalini Bidani.

In 1986, Dr. Anil Bidani filed a dissolution of marriage action against his wife. In his sworn interrogatory answers, he claimed that the only interest he held in any closely held corporation, partnership, joint venture, or sole proprietorship was in an unrelated real estate partnership. In his deposition, he testified that he received performance bonuses from Renal and AMS from 1983 through 1986, was a Renal employee, received W-2 forms to support his payments from Renal, had no contract with either Renal or AMS, had never been a shareholder of any medical corporation, and his salary was not affected by the receipts of Lewis and Associates, Renal, or AMS. When asked to explain his prior interest in Dialysis Services, Dr. Bidani stated that he joined that group when he was making rounds at the Chicago Kidney Center, but received his shares and subsequent distribution only when Dialysis Services was liquidated. Later at the court hearing, Dr. Bidani disavowed any present or future interest in Renal, AMS, Circle, or any future medical practice or medical supply corporation. In addition, he testified that no one was holding any property of value as a trustee or nominee for him.

Dr. Lewis testified in a deposition in Dr. Bidani's divorce action that Dr. Bidani had no interest in Renal or AMS, but was periodically reimbursed by both companies for his consultant services at the Chicago Kidney Center, which averaged two hours a week. Dr. Lewis had discretion in the amount he gave Dr. Bidani for his services. There was no regular reimbursement, no fixed amount of reimburse-

ment, and no agreement between Drs. Lewis and Bidani concerning the reimbursement. Dr. Lewis stated that Dr. Bidani had no contract or stock options with any of Dr. Lewis's corporations.

In addition, Dr. Lewis explained that Dialysis Services accumulated funds to build a dialysis unit outside of Rush. After it became clear in 1983 that the project would not go forward, Dialysis Services was liquidated and Dr. Bidani received his share of the distributions.

After considering all the testimony and evidence, the trial court approved the agreed order between Dr. Bidani and his wife and entered a judgment of dissolution of the marriage. Neither Renal, AMS, nor Circle was mentioned in the order.

In this case, the trial court entered summary judgment for defendants based on the doctrine of judicial estoppel. The order stated:

> "The court has made no determination that the allegations of the plaintiff are, in fact, untrue, but only that the plaintiff is estopped from asserting inconsistent positions in separate judicial proceedings."

The trial court found that several statements made in Dr. Bidani's interrogatories, deposition, and court testimony in his divorce proceeding were inconsistent with his statements in this action. Based on his prior testimony, Dr. Bidani successfully obtained "a judgment of dissolution of marriage on September 8, 1988, which clearly contemplated that [he] had no interest in the defendant entities." The trial court found Dr. Bidani's intention to include his ex-wife in any recovery in this case was immaterial to the issue of judicial estoppel and could be construed as a tacit admission that his position in this case is directly contrary to his testimonial position in the divorce action.

The trial court rejected Dr. Bidani's argument that he did not know the extent of his interest in AMS and Circle at the time of his divorce. The court stated that the argument "beg[ged] the question, as the claim of interest in these entities allegedly derives from agreements made in 1981-1983, well before the divorce proceedings, and these interests were not disclosed in the divorce proceedings."

■ The court explained that judicial estoppel is "a rule which estops a party from playing 'fast and loose' with the court. It means that a party is not permitted to maintain inconsistent positions in separate judicial proceedings. The doctrine of judicial estoppel rests upon public policy which upholds the sanctity of the oath and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings."

Judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. *Parisi v. Jenkins*, 236 Ill. App. 3d 42, 53, 603 N.E.2d 566 (1992); *Department of Transportation v. Grawe*, 113 Ill. App. 3d 336, 341, 447 N.E.2d 467 (1983). It is designed to promote the truth and to protect the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment. *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 857, 635 N.E.2d 485 (1994); *Cashmore v. Builders Square, Inc.*, 211 Ill. App. 3d 13, 18, 569 N.E.2d 1353 (1991). Having affirmed under oath that certain facts exist, a party cannot be allowed to later affirm that the contrary is true. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 854; *Finley v. Kesling*, 105 Ill. App. 3d 1, 9, 433 N.E.2d 1112 (1982).

■ Although judicial estoppel is flexible and not reducible to a formula, the following five elements are generally necessary: (1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and received some benefit; and (5) the two positions must be totally inconsistent. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 851; *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 259 Ill. App. 3d 231, 238-39, 631 N.E.2d 1302 (1994) (hereinafter *Trombello*); *Parisi*, 236 Ill. App. 3d at 53-54; *Grawe*, 113 Ill. App. 3d at 341-42.

■ Because judicial estoppel precludes a contradictory position without examining the truth of either statement, it necessarily eliminates the trial court's role as fact finder. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 856-57. For that reason, it should be cautiously applied to avoid infringing on the court's truth-seeking function and only when not to do so would result in an injustice. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 856-57. The application of the doctrine of judicial estoppel will not be reversed unless it was an abuse of the trial court's discretion. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 856.

■ Dr. Bidani's main assertion on appeal is that applying the doctrine of judicial estoppel will perpetuate Dr. Lewis's fraudulent conduct. His arguments confuse judicial estoppel, which protects the integrity of the courts rather than the litigants, with the distinct doctrine of equitable estoppel, which focuses on the relationship between the litigants. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 850 n.2; *Trombello*, 259 Ill. App. 3d at 238. Equitable estoppel refers to reliance by one party on the word or conduct of another so that the party changes his or her position and subsequently suffers harm. *Gary-Wheaton Bank v. Meyer*, 130 Ill. App. 3d 87, 95-96, 473 N.E.2d 548 (1984);

*Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 939, 445 N.E.2d 901 (1983). In contrast, judicial estoppel considers the inconsistent statements made by the same party in different judicial proceedings. *Parisi*, 236 Ill. App. 3d at 53-54. While the objective of equitable estoppel is to ensure fairness in the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system. See Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. 1244, 1248-49 (1986).

To support his contention that Dr. Lewis's conduct must be scrutinized when considering whether to invoke judicial estoppel, Dr. Bidani cites *Gary-Wheaton Bank*, 130 Ill. App. 3d at 95-96, *Wilson*, 112 Ill. App. 3d at 939, and *Forest Investment Corp. v. Chaplin*, 55 Ill. App. 2d 429, 434, 205 N.E.2d 51 (1965), which are equitable estoppel cases, and *Excellent Builders, Inc. v. Pioneer Trust & Savings Bank*, 15 Ill. App. 3d 832, 836-37, 305 N.E.2d 273 (1973), which involves the doctrine of the balancing of degrees of culpability.

He relies on *Riddlesbarger v. Riddlesbarger*, 324 Ill. App. 176, 57 N.E.2d 901 (1944), an equitable estoppel case that he mischaracterizes as a judicial estoppel case. Mrs. Riddlesbarger sought a divorce several years after her husband obtained an allegedly void divorce decree against her. *Riddlesbarger*, 324 Ill. App. at 177. Although the trial court found that Mr. Riddlesbarger had obtained the earlier divorce decree through fraudulent conduct against his wife and the city court, it held that his wife was estopped *in pais* from asserting any rights she may have had because she did not challenge the divorce decree earlier. *Riddlesbarger*, 324 Ill. App. at 181-83. On appeal, the divorce decree was declared void on the basis that the city court lacked jurisdiction since the alleged desertion did not occur within the city's territorial limits. *Riddlesbarger*, 324 Ill. App. at 184. In *dicta*, the reviewing court stated that Mrs. Riddlesbarger's actions would not have constituted estoppel *in pais* even if the decree had not been void because she thought the earlier divorce was valid until her attorney told her differently. *Riddlesbarger*, 324 Ill. App. at 189-90.

In response, Dr. Lewis compares this case with *Finley v. Kesling*, 105 Ill. App. 3d 1, and *Kale v. Obuchowski*, 985 F.2d 360 (7th Cir. 1993), which are factually similar to this case. In *Finley*, 105 Ill. App. 3d at 2, the appellate court affirmed the dismissal of an action in which the owner of the Oakland A's baseball team claimed beneficial ownership of 40% of the team's stock. Because he had testified in his prior divorce action that the 40% of the stock that was at issue was owned by his children and not by him, the subsequent action was

dismissed because of judicial estoppel. *Finley*, 105 Ill. App. 3d at 2-4. He was estopped from raising the issue in the later action because he deliberately perpetrated a fraud on the court by concealing it earlier. *Finley*, 105 Ill. App. 3d at 10.

In *Kale*, 985 F.2d 360, the federal court applied Illinois law. When a partner in an industrial park declared bankruptcy, the plaintiff asserted a claim that he also was a partner in the industrial park. *Kale*, 985 F.2d at 361. He asked the bankruptcy court to recognize that interest, free of any claims by the creditors, but the bankruptcy trustee opposed the request on the basis that the plaintiff had testified differently in his previous divorce proceeding. *Kale*, 985 F.2d at 361. The plaintiff had earlier testified that he was not investing in the industrial park in any way and had no interest in any real property other than the marital home. *Kale*, 985 F.2d at 361. The trial court dissolved the marriage and approved a property settlement requiring the plaintiff to pay $175,000 to his former wife in lieu of all other financial obligations. *Kale*, 985 F.2d at 361. Based on the plaintiff's position in his divorce proceeding, the bankruptcy judge invoked judicial estoppel to dismiss his partnership claim in the industrial park. *Kale*, 985 F.2d at 361.

Dr. Bidani argues that Dr. Lewis did not prove that Dr. Bidani prevailed in the divorce proceeding based on his previous position, which is an element of judicial estoppel. Dr. Bidani mistakenly claims that he had to lose his divorce action and his ex-wife had to win before judicial estoppel can be applied. That is overstating the requirement.

The rule has been alternately stated as (1) the prior inconsistent position must have been accepted by the court (*Ceres Terminals, Inc.*, 259 Ill. App. 3d at 855); and (2) the party must have successfully maintained the first position and received some benefit from it (*Parisi*, 236 Ill. App. 3d at 53-54; *Cashmore*, 211 Ill. App. 3d at 18; *Grawe*, 113 Ill. App. 3d at 341-42).

Dr. Bidani argues that he did not receive any benefit from his position in the divorce proceeding because the divorce decree was no different as a result of that position. Dr. Bidani indicates that the divorce decree did not divide any of his income and that he fully disclosed all his income from AMS, Renal, and Circle to his ex-wife prior to the settlement agreement.

Dr. Bidani's argument is similar to the argument rejected in *Kale*, where the plaintiff argued that he had not prevailed on his previous position in the divorce proceeding because the divorce court approved the property settlement without deciding any issue in his favor. *Kale*, 985 F.2d at 361. The federal court rejected that argument, stating:

"Hoodwinking a [ ] court so completely that decision becomes unnecessary is not a satisfactory reason to authorize a contrary claim in another court. No case appellants have cited to us, and none we could find, makes application of judicial estoppel depend on the existence of a judicial opinion adopting the litigant's position; it is enough that the litigant win. Sometimes a settlement sidesteps the issue in the first case, so that neither side prevails on a particular contested issue. [Citation.] Frequently, however, a settlement represents capitulation. Persons who triumph by inducing their opponents to surrender have 'prevailed' as surely as persons who induce the judge to grant summary judgment. [Citation.] Having won a favorable allocation of property in the divorce case by insisting that he had no interest in real property other than the marital home, [the plaintiff] is stuck with that proposition in subsequent litigation." *Kale*, 985 F.2d at 362.

Similarly, Dr. Bidani successfully advanced his position regarding his business interests in his divorce case despite there being no judicial decision on that issue. As a result of his position, that he had no interest in Renal, AMS, or Circle, the trial court approved the settlement agreement and entered final judgment without including Dr. Bidani's alleged interests in those companies.

Dr. Bidani's next assertion is that his statements were not totally inconsistent because his position after discovery was that he had a profit interest, not the ownership interest that was alleged in his unverified first amended complaint. He contends that in his divorce action, he was asked only whether he had an ownership interest in defendant corporations, not whether he had any profit interest. Dr. Bidani admits that his testimony in the divorce action was not totally forthcoming, but claims that it was truthful because his interest in the corporations could not be transferred to his ex-wife or divided with her. He maintains that there was no reason to disclose to his ex-wife his right to share in the profits until he learned that AMS and Circle were making large profits, which he then offered to share with his ex-wife. He also claims that he was confused about the nature of his interest in the corporations, especially because many of the questions called for legal conclusions.

Dr. Bidani's argument has no merit. In his divorce action, he testified under oath that he had no present or future interest whatsoever in Renal, AMS, Circle, or any other medical practice or medical supply company. In this action, he contends that he has a profit interest in Renal, AMS, and Circle. Those positions are totally inconsistent and cannot be reconciled.

Furthermore, it is irrelevant that Dr. Bidani has now offered that his ex-wife will share in 50% of any recovery in this case. He stresses

that judicial estoppel should not be applied because it would penalize his ex-wife, who was the purported victim in the divorce action. We agree with the trial court that his intention to include his ex-wife in any recovery in this case is immaterial to the issue of judicial estoppel and could be construed as a tacit admission that his position in this case is directly contrary to his testimonial position in the divorce action.

■ We conclude that summary judgment was properly granted on the basis of judicial estoppel because Dr. Bidani's sworn testimony in his previous divorce action was totally inconsistent with his position in this case. Although applying judicial estoppel sometimes leads to harsh results, it is often necessary to protect the sanctity of the oath and to preserve the integrity of the courts and the judicial process. *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. at 1245.

### Leave to File Second Amended Complaint

Finally, Dr. Bidani asserts that he should be granted leave to file a second amended complaint because he is now asserting a profit interest in AMS and Circle instead of the ownership interest he asserted in his first amended complaint. We disagree.

■ Although courts are encouraged to freely and liberally allow the amendment of pleadings, a party's right to amend is not absolute and unlimited. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467, 605 N.E.2d 493 (1992). Among the factors to consider in determining whether or not to permit an amendment to the pleadings are whether the amendment would cure a defect in the pleadings; whether the other party would be prejudiced or surprised by the proposed amendment; the timeliness of the proposed amendment; and whether there were previous opportunities to amend the pleadings. *Lee*, 152 Ill. 2d at 467-68. Absent an abuse of discretion, the trial court's decision regarding amendments of pleadings will not be disturbed on review. *Lee*, 152 Ill. 2d at 467.

■ Because the second amended complaint would not have cured the defect in the first amended complaint, the trial court did not abuse its discretion in denying Dr. Bidani leave to file a second amended complaint. Contrary to Dr. Bidani's contention that he has changed his position, the first amended complaint asserts both a profit interest in Renal, AMS, and Circle, and an ownership interest in Circle. Therefore, judicial estoppel would still apply if he were allowed to assert an interest only in the profits of AMS, Renal, and Circle. In addition, naming Dr. Lewis as the only defendant would make no difference in the summary judgment motion. Accordingly,

we conclude that the trial court did not abuse its discretion when it denied Dr. Bidani leave to file a second amended complaint.

Based on the foregoing, the circuit court judgment is affirmed.

Affirmed.

TULLY, P.J., and GALLAGHER, J., concur.